## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| Lindsay Garcia, a qualified voter and a candidate in the Democratic Party for the 5th congressional district, and on behalf of all others similarly situated; and Eugene Collins, a qualified voter<br><br>    Plaintiffs,<br><br>v.<br><br><br>JEFF LANDRY, in his official capacity as Governor of the State of Louisiana; ELIZABETH B. MURRILL, in her official capacity as Attorney General of the State of Louisiana; and NANCY LANDRY, in her official capacity as Secretary of State of the State of Louisiana.<br><br>    Defendants. | Civil Action: 3:26-cv-00471<br><br>Hon. Stuart Kyle Duncan<br>Hon. Greg Guidry<br>Hon. Shelly D. Dick |

## <u>DEFENDANTS' OPPOSITION TO</u>
## <u>PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................iii

INTRODUCTION ........................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND......................................... 1

ARGUMENT ................................................................................................. 3

I.  THE COURT SHOULD DISMISS THIS SUIT FOR LACK
    OF JURISDICTION. .............................................................................5

    A.    Attorney General Murrill Is Immune from Suit. .........................5

    B.    Plaintiffs Cannot Establish Article III Standing .......................6

    C.    Plaintiffs' Claims for Prospective Relief Will Likely
          Be Moot Before this Court Rules. ..............................................9

II.  THE COURT SHOULD DECLINE JURISDICTION.........................................10

III. PLAINTIFFS INVITE THE COURT TO CONTRAVENE THE
     PURCELL PRINCIPLE. .......................................................................11

IV.  THE COURT SHOULD DENY INJUNCTIVE RELIEF.....................................13

    A.    Plaintiffs Are Not Substantially Likely to Succeed
          on the Merits. .........................................................................14

    B.    The Balance of the Equities Cuts Decisively Against
          an Injunction. .........................................................................22

    C.    An Injunction Is Not in the Public Interest. .............................24

CONCLUSION............................................................................................26

## TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*In re Abbott,*
   956 F.3d 696 (5th Cir. 2020), *cert. granted, judgment vacated sub nom. Planned Parenthood Ctr. for Choice v. Abbott,* 141 S. Ct. 1261 (2021) ................................................................... 6

*Allen v. Wright,*
   468 U.S. 737 (1984) ............................................................................ 8

*Anderson v. Jackson,*
   556 F.3d 351 (5th Cir. 2009) ........................................................... 14

*Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n,*
   576 U.S. 787 (2015) ......................................................................... 19

*Arizonans for Official English v. Arizona,*
   520 U.S. 43 (1997) ............................................................................. 9

*Burdick v. Takushi,*
   504 U.S. 428 (1992) ......................................................................... 15

*Bush v. Gore,*
   531 U.S. 98 (2000) ........................................................................... 16

*Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.,*
   No. CV 17-491, 2020 WL 10486334 (E.D. La. Oct. 16, 2020) ........................ 13, 14

*Callais v. Landry,*
   No. 3:24-cv-00122 (W.D. La., Apr. 30, 2026) ................................................. *passim*

*Callais v. Louisiana,*
   No. 24-109, 608 U.S.__, 2026 WL 1209010 (May 4, 2026) .............................. 2, 10

*Chisom v. Roemer,*
   501 U.S. 380 (1991) ......................................................................... 22

*City of Austin v. Paxton,*
   943 F.3d 994 (5th Cir. 2019) ............................................................. 6

*City of Mobile v. Bolden,*
   446 U.S. 55 (1980) ....................................................................... 21, 22

iii

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) .................................................................... 7

*Clark v. Edwards,*
  468 F. Supp. 3d 725 (M.D. La. June 22, 2020) ..................................... 17

*Clark v. Prichard,*
  812 F.2d 991 (5th Cir. 1987) ........................................................ 14

*Corman v. Torres,*
  287 F. Supp. 3d 558 (M.D. Pa. 2018) ................................................ 19

*Dillworth v. Clark,*
  129 F. Supp. 2d 966 (S.D. Miss. 2000) ............................................... 10

*Jordan v. Landry,*
  No. C-777837 (La. 19th Jud. Dist. Ct.) ............................................. 18

*Foster v. Love,*
  522 U.S. 67 (1997) ............................................................... 20, 21

*Gill v. Whitford,*
  585 U.S. 48 (2018) .................................................................. 7

*Harris v. City of Houston,*
  151 F.3d 186 (5th Cir. 1998) ........................................................ 9, 10

*Jones v. LaCaze,*
  336 So. 2d 518 (La. Ct. App. 1976) .................................................. 17

*Kirksey v. Bd. of Supv'rs of Hinds Cnty.,*
  554 F.2d 139 (5th Cir. 1977) (en banc) .............................................. 21

*In re Landry,*
  83 F.4th 300 (5th Cir. 2023)......................................................... 8, 12

*Libertarian Party v. Dardenne,*
  595 F.3d 215 (5th Cir. 2010) ........................................................ 17

*Louisiana v. Callais,*
  No. 24-109, 608 U.S. ___, 2026 WL 1153054 (2026) ............................. 1, 3, 21, 24

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ................................................................. 6, 7

iv

*Martinez v. Mathews,*
    544 F.2d 1233 (5th Cir. 1976) ........................................................................ 23

*Merrill v. Milligan,*
    142 S. Ct. 879 (2022) .................................................................................... 13

*Moore v. La. Bd. of Elementary & Secondary Educ.,*
    743 F.3d 959 (5th Cir. 2014) ........................................................................... 5

*Nat'l Council of Jewish Women v. Landry,*
    No. C-777814 (La. 19th Jud. Dist. Ct. May 1, 2026) ........................................ 18

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984) ........................................................................................ 19

*Pontchartrain Ptrs., LLC v. Tierra de Los Lagos, LLC,*
    48 F.4th 603 (5th Cir. 2022) .......................................................................... 11

*Purcell v. Gonzalez,*
    549 U.S. 1 (2006) ..................................................................................... 11, 12

*Reno v. Bossier Parish School Bd.,*
    520 U.S. 471 (1997) ...................................................................................... 21

*Reynolds v. Sims,*
    377 U.S. 533 (1964) ................................................................................. 20, 24

*Ridgely v. FEMA,*
    512 F.3d 727 (5th Cir. 2008) ......................................................................... 14

*Save Power Ltd. v. Syntek Fin. Corp.,*
    121 F.3d 947 (5th Cir. 1997) ......................................................................... 11

*Sims v. Landry,*
    No. C-777816 (La. 19th Jud. Dist. Ct. May 1, 2016) ........................................ 18

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) .......................................................................................... 9

*Storer v. Brown,*
    415 U.S. 724 (1974) ...................................................................................... 20

*Tex. Democratic Party v. Abbott,*
    961 F.3d 389 (5th Cir. 2020) ....................................................................... 6, 20

*Tex. League of United Latin Am. Citizens v. Hughs,*
    978 F.3d 136 (5th Cir. 2020) ........................................................................ 23

*Veasey v. Perry,*
    769 F.3d 890 (5th Cir. 2014) ........................................................................ 13

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.,*
    429 U.S. 252 (1977) ...................................................................................... 21

*State ex rel. Vullo v. Plaquemines Par. Police Jury,*
    115 So. 2d 368 (La. 1959) ...................................................................... 16, 17

*W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24,*
    751 F.2d 721 (5th Cir. 1985) .................................................................. 10, 11

*Ex Parte Young,*
    209 U.S. 123 (1908) ........................................................................................ 5

**Statutes**

2 U.S.C. § 1 ...................................................................................................... 20

2 U.S.C. § 7 ...................................................................................................... 20

28 U.S.C. § 2284 ............................................................................................... 5

La. Civil Code art. 11 ...................................................................................... 17

La. R.S. 18:401.1 ..................................................................................... 2, 6, 17

La. R.S. 18:401.3 ......................................................................................... 17, 19

**Other Authorities**

Emergency,
    Black's Law Dictionary (12th ed. 2024) ....................................................... 17

Louisiana Secretary of State,
    *Elections Calendar 2026* (2026),
    https://tinyurl.com/5e9z2dzv ......................................................................... 3

Press Release, La. Sec'y of State Nancy Landry,
    *Louisiana U.S. House of Representatives Races*
    *Suspended Early: Voting Begins Saturday for All*
    *Other Races* (Apr. 30, 2026),
    https://perma.cc/4DKN-4Y6D ................................................................... 12, 22, 23

U.S. Const. amend. XV, § 1 ........................................................................... 21

U.S. Const. art. I, § 4, cl. 1.............................................................................. 16, 19

## INTRODUCTION

On May 1, 2026, the Court ordered Defendants to "file any opposition to the plaintiff's claim for injunctive relief on or before May 5th, 2026," and state "whether an evidentiary hearing is requested." ECF 8 at 1–2. Accordingly, Defendants submit this opposition. Plaintiffs ask this Court to force state officials to hold an unconstitutional election that the Western District has enjoined. It should not do so. As we stand today, the Supreme Court has issued its judgment forthwith, the State is under a live Western District injunction prohibiting it from holding the very congressional elections Plaintiffs seek, and voting in the other races started last Saturday. This combination—call it standing, mootness, comity, equities, public interest, or failure on the merits—cannot support this suit. And no amount of evidence can change that fact. Defendants thus agree that an evidentiary hearing is unnecessary and that this matter should be "submitted [and denied] on the briefs." *Id.* at 2.

## FACTUAL AND PROCEDURAL BACKGROUND

This action arises in the immediate aftermath of the Supreme Court's decision in *Louisiana v. Callais*, which invalidated the State's congressional districting plan and remanded the case for further proceedings to an already-empaneled three-judge district court in the Western District. *Louisiana v. Callais*, No. 24-109, 608 U.S. ___, 2026 WL 1153054 (2026) (issued around 9:30 a.m. Central Time on April 29, 2026).

On remand, the next day (April 30, 2026, at 3:24 p.m. Central Time), the Western District issued an order clarifying that its prior injunction remained in effect: "This Court's ruling having been affirmed and the matter remanded by the

1

Supreme Court, the permanent Injunction issued by this Court prohibiting the State of Louisiana 'from using SB8's map of congressional districts for any election' remains in effect." Order, *Callais v. Landry*, No. 3:24-cv-00122 (W.D. La., Apr. 30, 2026), ECF 261 (citation omitted). The Secretary of State and the Governor immediately (and appropriately) responded to that order. The Secretary of State declared an election emergency under Louisiana Revised Statute 18:401.1(B), and the Governor issued Executive Order JML 26-038 suspending the congressional primaries while leaving other elections unchanged. The Governor filed the Executive Order with the Secretary of State, published the Executive Order with the Louisiana Register, and posted the Executive Order to X on April 30, 2026, at 3:44 p.m. Central Time.

Later that day, Plaintiffs filed this action, asserting federal and state claims and seeking emergency injunctive relief. They ask this Court to issue an affirmative injunction requiring the State to conduct congressional elections under the same map the Supreme Court has ruled unconstitutional and the Western District has prohibited state officials from using. Plaintiffs here ask this three-judge Court to compel state officials to use that unconstitutional map anyway.

Last night (May 4), the Supreme Court ordered the handing down of its April 29, 2026 opinion "forthwith." *Callais v. Louisiana*, No. 24-109, 608 U.S.__, 2026 WL 1209010 (May 4, 2026) (attached as Ex. A). The Western District confirmed receipt of the Supreme Court's certified judgment that same day, *see Callais v. Landry*, No. 3:24-CV-00122 (W.D. La. May 4, 2025), ECF 265, and notified counsel at 7:50 a.m. Central Time on May 5.

2

All of this overlays the State's ongoing administration of its 2026 election cycle, including a closed-party primary scheduled for May 16, 2026, and a second primary scheduled for June 27. The May ballot includes federal (including the congressional election at issue here), state (both statewide and others), and local contests, and early voting began on Saturday, May 2, 2026. *See* Louisiana Secretary of State, *Elections Calendar 2026* (2026), available at https://tinyurl.com/5e9z2dzv. Early voting concludes May 9, 2026—just two days after this Court's reply deadline for briefing on this matter. ECF 8 at 2.

## ARGUMENT[1]

Plaintiffs want this Court essentially to enjoin the implementation of the Supreme Court's decision in *Callais*, 2026 WL 1153054, and relitigate the issues presented in *Callais* (a decision from an already empaneled three-judge district court in the Western District of Louisiana). Their request is simple yet unlawful: Force state officials to hold an unconstitutional primary election under a districting map that has been held unconstitutional by the Supreme Court and enjoined by the Western District, count the ballots from that election to choose the congressional primary winners, and use that unconstitutional and enjoined map to determine the winners of this November's general election for Louisiana's congressional districts. independent reasons:

---

[1] Given that the Court has "tak[en] the issue of its jurisdiction under 28 U.S.C. § 2284 under advisement," and has requested briefing on other issues "[p]ending the panel's examination of jurisdiction," ECF 8, Defendants do not address that issue here.

3

*First*, Attorney General Murrill has sovereign immunity and should be dismissed from the case. She is not involved in the enforcement of the Secretary of State's Suspension or the Governor's Executive Order that Plaintiffs here challenge, and thus she is immune from suit.

*Second*, Plaintiffs lack Article III standing. The Executive Order does not deny any voter the right to vote. Instead, it temporarily postpones a single set of primary contests so that the State may develop a constitutional map. Plaintiffs' alleged injuries are neither traceable to the Executive Order nor redressable by this Court.

*Third*, this action will soon be moot. Because the May 16 primary election is already underway, this Court is unlikely to receive briefing and decide Plaintiffs' claims before ballots are cast and collected for those elections that have been neither suspended by the Governor nor enjoined by the Western District's injunction.

*Fourth*, the Court should decline jurisdiction. The issues Plaintiffs present substantially overlap with the ongoing *Callais* litigation before the Western District, and Plaintiffs expressly seek a mandatory injunction requiring Defendants to do precisely what the Western District has prohibited. Principles of comity, judicial economy, and the first-filed rule counsel this Court to dismiss or transfer rather than create conflicting federal directives. It would be inconsistent with orders from the United States Supreme Court and the Western District of Louisiana, and deeply unfair to voters and the candidates, to try to restart an election under an enjoined districting map.

*Fifth*, Plaintiffs invite the Court to contravene the *Purcell* principle. An election is already underway for numerous state offices, and federal-court interference to mandate an unconstitutional election would sow confusion, chaos, and distrust.

*And sixth*, the Plaintiffs' request for injunctive relief has no merit. It is an attempt (a) to undermine the authority of the Governor lawfully granted to him by the Legislature and properly exercised here, (b) to relitigate the constitutionality of congressional election maps that the Supreme Court has held are unconstitutional, and (c) to override the injunction granted by the three-judge Court in the Western District. Granting a disfavored affirmative injunction to require state election officials to use an unconstitutional map would irreparably interfere with the State's and its officials' obligation to follow the directives of the Supreme Court and the Western District to remedy a clear constitutional defect, and it would undermine public trust in the election process. The Court should deny their request.

## I. THE COURT SHOULD DISMISS THIS SUIT FOR LACK OF JURISDICTION.

### A. Attorney General Murrill Is Immune from Suit.

The Eleventh Amendment deprives federal courts of jurisdiction over suits against "a state official in [her] official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). An exception exists under *Ex Parte Young*, 209 U.S. 123, 159 (1908), when a plaintiff seeks prospective relief against a state official in her official capacity for ongoing federal violations. That official, however, "by virtue of [her] office, must have some connection with the

enforcement of the challenged act, or else the suit is merely making [her] a party as a representative of the state, and thereby attempting to make the state a party." *City of Austin v. Paxton*, 943 F.3d 994, 997 (5th Cir. 2019) (cleaned up). It is "not enough that the official have a *general* duty to see that the laws of the state are implemented." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400−01 (5th Cir. 2020) (citation omitted). If the official is not "'statutorily tasked with enforcing the challenged law,' then the requisite connection is absent." *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020), *cert. granted, judgment vacated sub nom. Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021). "Otherwise, the suit is effectively against the state itself and thus barred by the Eleventh Amendment and sovereign immunity." *Id.* at 708.

General Murrill has no connection with the enforcement of the Secretary's emergency declaration or the Governor's Executive Order. Under state law, the power to issue the Executive Order, declare an emergency, and delay or suspend elections lies with the Governor upon certification by the Secretary of State. La. R.S. 18:401.1(B). General Murrill is thus immune from this suit, and it should be dismissed as against her.

## B. Plaintiffs Cannot Establish Article III Standing

Plaintiffs' claims fail at the outset because they lack Article III standing. To establish standing, a plaintiff must demonstrate: (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by

6

a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs cannot satisfy any of these requirements.

**1.** Plaintiffs cannot establish injury in fact. Neither the Secretary's emergency declaration nor the Governor's Executive Order denies any voter the right to vote. Those actions instead temporarily postpone a single set of primary contests so that the State can develop a constitutionally compliant congressional map. Every other election on the May 16 ballot proceeds as scheduled, and every voter will have the opportunity to cast a ballot in a constitutional congressional primary once a lawful map is enacted. A delay in the timing of one contest, undertaken to comply with the directives of the Supreme Court and the Western District's injunction, is not the sort of concrete and particularized injury that Article III demands. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (requiring "certainly impending" injury, not merely speculative future harm). Plaintiffs' alleged disenfranchisement is illusory: They are not being deprived of their right to vote but rather being afforded the opportunity to vote in a constitutional election.

To the extent Plaintiff Garcia claims a distinct injury as a congressional candidate, that interest is contingent on an election conducted under a map the Supreme Court has held unconstitutional and the Western District has enjoined. No candidate has a legally cognizable interest in being part of such an election. *See Gill v. Whitford*, 585 U.S. 48, 54 (2018) (emphasizing that a plaintiff must assert a "personal stake" rather than a generalized grievance about government conduct).

**2.** Plaintiffs cannot establish traceability. There is no causal connection between the Executive Order and Plaintiffs' alleged injury. The congressional primary was suspended *only* because the Supreme Court held the underlying map unconstitutional and the Western District renewed its prohibition on using that map for "any election." The Governor's Executive Order is a direct response to those judicial directives. If any denial of the right to vote were to exist (it does not), it would be at the hands of the Western District's Order, which has renewed its "prohibit[ion]" on "the State of Louisiana from 'using SB8's map of congressional districts for any election.'" Order, *Callais*, No. 3:24-cv-00122 (W.D. La. Apr. 30, 2026), ECF 261 (citation omitted).

That prohibition likewise means there is currently no congressional map that the State can lawfully use for the 2026 congressional election, including the ongoing primary, until the State enacts a new one. And because "[a]pportionment is principally a legislative responsibility," courts are to "afford to the government body a reasonable opportunity to produce a constitutionally permissible plan." *In re Landry*, 83 F.4th 300, 307 (5th Cir. 2023) (citation omitted). Defendants' decisions to comply with the Western District Order and exercise their sovereign prerogative to produce a constitutionally compliant map is what the law requires. Plaintiffs thus have not suffered any injury to their right to vote that is fairly traceable to the emergency declaration or the Executive Order. *See Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984) (traceability requires that the injury be "fairly traceable" to the defendant's conduct, not to independent actions of third parties).

8

**3.** Plaintiffs' alleged injuries are not redressable. Plaintiffs ask the Court to compel the State to conduct a congressional primary election using the very map that the Supreme Court has invalidated and the Western District has enjoined the State from using "for any election." Order, *Callais*, No. 3:24-cv-00122 (W.D. La. Apr. 30, 2026), ECF 261. Granting such relief would *inflict*, not *remedy*, constitutional harm. Moreover, even if this Court were inclined to order the election to proceed under the enjoined, unconstitutional map, it could not override the Western District's renewed injunction prohibiting that very thing. *Id.* Plaintiffs therefore ask this Court for relief it cannot grant without creating a direct conflict with the Western District's Order. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 109 (1998) (relief must "likely" redress the injury; speculative or legally foreclosed remedies do not establish redressability). Because Plaintiffs cannot demonstrate injury in fact, traceability, or redressability, this Court lacks Article III jurisdiction and should dismiss for lack of standing.

### C. Plaintiffs' Claims for Prospective Relief Will Likely Be Moot Before this Court Rules.

Plaintiffs' "requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (citation omitted). Plaintiffs cannot satisfy that requirement here. A request for injunctive relief becomes moot when the event the plaintiff seeks to enjoin happens. *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998). And by the time this Court receives briefing and argument and makes a decision, the primary

9

congressional election that Plaintiffs seek to modify will have already occurred. And there is no argument that this claim is capable of repetition yet evading review because all future congressional elections will be governed by the new map the State is in the process of enacting.

As detailed above, *see* p.3 *supra*, the State is already well into its early voting period for the May 16 primary. Early voting is scheduled to conclude on May 9, which means just two of the seven days of early voting will remain by the time briefing here is complete on May 7. Plaintiffs thus are seeking an injunction that likely would afford no effective relief. As a result, their request for injunctive relief is moot. The Court "simply cannot enjoin that which has already taken place." *Harris*, 151 F.3d at 189; *see Dillworth v. Clark*, 129 F. Supp. 2d 966, 970 (S.D. Miss. 2000) (had plaintiff sought injunctive relief, his claim would have been moot because "the time for getting on the ballot in Hinds County has passed"). Plaintiffs' claim for disfavored, mandatory injunctive relief likely will be moot by the time this Court decides this case.

Similarly moot is Plaintiffs' claim that state officials cannot suspend the congressional primary election because the Supreme Court has not yet issued its mandate (which Plaintiffs also sought to delay). That has now happened. *See Callais*, 2026 WL 1209010 (issuing judgment). The Court should dismiss all claims for injunctive relief as moot.

## II.    THE COURT SHOULD DECLINE JURISDICTION.

As Defendants previously explained in their Motion to Transfer (*see* ECF 6 & 6-1), a court can decide to decline jurisdiction and "dismiss a declaratory judgment or

10

injunctive suit if the same issue is pending in litigation elsewhere." *W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985) (citation omitted). Under this principle, courts should "dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court" in order to "avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id.* This ties into the first-filed rule, where "in the absence of 'compelling circumstances,' the district court who gets the suit first should be the one to decide the case." *Pontchartrain Ptrs., LLC v. Tierra de Los Lagos, LLC*, 48 F.4th 603, 606 (5th Cir. 2022) (cleaned up).

Even if this case and the Western District suit are not identical, the issues substantially overlap and create a likelihood of conflicting rulings. *See Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950–52 (5th Cir. 1997). Indeed, Plaintiffs expressly seek a mandatory injunction affirmatively requiring Defendants to do precisely what the Western District has "prohibit[ed]" them from doing. Order, *Callais*, No. 3:24-cv-00122 (W.D. La., Apr. 30, 2026), ECF 261. This Court, as the second court, should dismiss or (at the very least) transfer. *See Save Power Ltd.*, 121 F.3d at 950–52.

## III. PLAINTIFFS INVITE THE COURT TO CONTRAVENE THE *PURCELL* PRINCIPLE.

Even if Plaintiffs could overcome sovereign immunity, could establish standing, and were not asking this Court to overrule the Western District, their request for injunctive relief would still fail. For they invite the Court to contravene the principle of judicial restraint in election interference established by *Purcell v.*

11

*Gonzalez*, 549 U.S. 1 (2006). The Supreme Court and the Fifth Circuit have applied the *Purcell* principle to restrain judicial intervention in elections when it threatens to confuse voters, unduly burden election administrators, or otherwise sow chaos or distrust in the electoral process.

Plaintiffs' request here, if granted, brings that threat to pass immediately and in spades. They ask the Court to force an unconstitutional congressional election through a disfavored, affirmative injunction that would directly contradict the Supreme Court's invalidation of that election and the Western District's contrary injunction—all of which would sow chaos and undermine confidence in the electoral process. This is especially true here as state officials are actively working to remedy the constitutional defect and hold separate elections for congressional offices later this year—as is their sovereign prerogative. *See In re Landry*, 83 F.4th at 307. In the meantime, granting Plaintiffs' desired intervention will encourage distrust of the votes (a) currently being cast in the non-congressional May 16 elections that are not subject to any injunction, and (b) ultimately cast in the revised congressional election process. In fact, by the time briefing here is complete on May 7 (*see* ECF 8 at 2), five of the seven days of early voting will have occurred. Voters are aware that, "[w]hile the U.S. House races will remain on voters' ballots, any votes cast in those races will not be counted." Press Release, La. Sec'y of State Nancy Landry, *Louisiana U.S. House of Representatives Races Suspended Early: Voting Begins Saturday for All Other Races* (Apr. 30, 2026), https://perma.cc/4DKN-4Y6D.

Reversing that instruction by federal-court injunction would not "be feasible without significant cost, confusion, or hardship." *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring); *see Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (staying injunction entered nine days before the start of early voting). Such an injunction would add yet another layer of confusion (both for voters and the Secretary and local clerks) as to how such voting should be conducted more than two-thirds of the way through the early voting period. And it would require this Court—at best—to issue detailed orders explaining how to handle ballots cast during early voting before the Court's injunction and how to administer a congressional district map that has been found unconstitutional by the Supreme Court and enjoined by the Western District, and enjoin the legislature from taking appropriate action to enact a new map and process for the 2026 elections.

Plaintiffs contend that *Purcell* does not apply because the injunction they seek would affirmatively reinstate, not stop, the congressional election. This argument ignores *Purcell*'s central concern—*judicially*-created confusion. It is a doctrine of *judicial* restraint and as such has nothing to say about state officials' obedience to other federal courts' mandates. The actions of state officials are not the subject of *Purcell*; this Court's actions are. Plaintiffs' request itself thus invites the Court to contravene *Purcell*. The Court should decline that request.

## IV.    THE COURT SHOULD DENY INJUNCTIVE RELIEF.

"Temporary restraining orders and preliminary injunctions are extraordinary forms of relief and require the plaintiff to carry an onerous burden." *Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, No. CV 17-491, 2020 WL 10486334, at *3

13

(E.D. La. Oct. 16, 2020) (citation omitted); *accord Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). To obtain such relief, Plaintiffs must demonstrate (1) a substantial likelihood of prevailing on the merits, (2) a substantial threat of irreparable injury if the injunction is not granted, (3) the threatened injury outweighs any harm to Defendants if the injunction is granted, and (4) the injunction is in the public interest. *Ridgely v. FEMA*, 512 F.3d 727, 734 (5th Cir. 2008). Ultimately, injunctive relief is "an extraordinary and drastic remedy and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (internal quotation marks omitted). Plaintiffs have not met that burden here.

## A. Plaintiffs Are Not Substantially Likely to Succeed on the Merits.

Plaintiffs assert multiple federal and state constitutional claims, while ignoring the basic background fact that the Supreme Court held SB8 to be an unconstitutional gerrymander and that the Western District has clarified that its prior injunction prohibiting the State from using SB8 remains in force. It cannot be that both *using* SB8 and *not using* SB8 are unconstitutional and subject to injunctions—one forbidding and the other mandating its use. In reality, Plaintiffs here are mounting an impermissible, collateral attack on the jurisdiction of the Western District and trying to force the State to ignore the Supreme Court's decision and the Western District's injunction for this congressional election. That they cannot do. But even if they could, their arguments fail on their merits.

In support of their request for injunctive relief, Plaintiffs contend that the Governor's Executive Order (a) violates the First and Fourteenth Amendments under

14

the *Anderson-Burdick* framework by burdening their right to vote; (b) infringes their associational and ballot-access rights; (c) exceeds the Governor's authority under state law; (d) violates the Elections Clause by usurping the Legislature's power over the time, place, and manner of federal elections; (e) is preempted by federal election-timing statutes; (f) violates Section 2 of the Voting Rights Act by intentionally discriminating on the basis of race; and (g) violates the Fifteenth Amendment. None of these claims has merit.

Plaintiffs' theory is straightforward but flawed. They contend that the State has selectively nullified votes already cast in the congressional primary by suspending that election while allowing other contests to proceed, thereby burdening their right to vote and altering the rules midstream. From that premise, they argue that the Constitution requires the State to continue administering an unconstitutional congressional election regardless of what the Supreme Court and the Western District have said on the issue. That framing ignores the dispositive point that whether those votes may be given legal effect is itself governed by federal law and binding court orders, and it mistakes the State's compliance with binding federal court orders for a constitutional injury. The Court should deny relief.

**1.** Under the *Anderson-Burdick* framework, a court must first "weigh the character and magnitude of the asserted injury" against the State's "precise interests" justifying the action. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (internal quotation marks omitted). Where a regulation imposes only "reasonable, nondiscriminatory restrictions," the State's important regulatory interests are generally sufficient. *Id.*

15

Here, Plaintiffs have not identified any discriminatory burden on their right to vote, much less a severe one, because the State treats all voters and all ballots identically. No votes cast under the invalid map will be counted, and every voter will participate on equal terms in a lawful election once a valid map is enacted.

Moreover, Plaintiffs' theory rests on a fundamental mischaracterization of what it means to "selectively" count ballots. The Supreme Court has made clear that the Equal Protection Clause forbids only "arbitrary and disparate treatment [of] voters" through "varying standards" governing the counting of ballots. *Bush v. Gore*, 531 U.S. 98, 107 (2000). No such disparate treatment exists here. There is no subset of voters whose ballots are credited while others' ballots are discarded. Instead, the State has made a uniform determination to follow the Supreme Court's and the Western District's directions not to conduct an unconstitutional congressional election. That is equal treatment, not discrimination. By ensuring that every voter has the opportunity to participate in a constitutional congressional election, the State protects, rather than burdens, the right to vote. The challenged action is thus a reasonable, nondiscriminatory measure applied uniformly to all voters that satisfies the *Anderson-Burdick* standard.

**2.** Neither does the Executive Order exceed the Governor's authority under state law nor usurp the Legislature's authority under the Elections Clause, U.S. Const. art. I, § 4, cl. 1, to enact congressional maps and schedule federal elections. On the state-law claim, the Governor has appropriately exercised, not exceeded, his authority. Under Louisiana law, election laws are *sui generis* and present non-

16

justiciable political questions. *See, e.g., State ex rel. Vullo v. Plaquemines Par. Police Jury*, 115 So. 2d 368, 373 (La. 1959) (holding that laws controlling elections are political rather and judicial questions); *Jones v. LaCaze*, 336 So. 2d 518, 520 (La. Ct. App. 1976) (holding that the specifics of the election code control over other laws).

And in all events, it was the Legislature that empowered the Governor, in conjunction with the Secretary of State, to declare election emergencies and modify the timing and manner of elections accordingly. La. R.S. 18:401.1. The word "emergency" in that statue "must be given [its] generally prevailing meaning," La. Civil Code art. 11, which simply means "a sudden and serious event or an unforeseen change in circumstances that calls for immediate action to avert, control, or remedy harm," Emergency, Black's Law Dictionary (12th ed. 2024). The Secretary of State has certified that such an emergency exists, and the Governor has issued an Executive Order, the precise sequence contemplated by R.S. 18:401.1. Nothing more is required.

Indeed, Louisiana Governors often have exercised their statutory power to adjust elections in response to emergencies like hurricanes and the COVID-19 pandemic. *See Libertarian Party v. Dardenne*, 595 F.3d 215, 216 (5th Cir. 2010) (hurricanes); *Clark v. Edwards*, 468 F. Supp. 3d 725, 731 (M.D. La. June 22, 2020) (pandemic). Louisiana also has employed emergency election procedures in more localized circumstances. In 2024, following a bridge outage in Iberville Parish that disrupted access to polling locations, the Legislature approved an emergency election plan pursuant to the Louisiana Election Code. *See* La. R.S. 18:401.3; Emergency

17

Certification Fall 2024 Elections, Governor Jeff Landry (Sep. 6, 2024) (attached as Ex. B). That episode underscores the same principle: Louisiana law contemplates flexibility in election administration to address emergent conditions and ensure orderly and lawful elections. The Governor and the Secretary of State properly acted within the scope of their statutory authority.

Louisiana's courts agree. Three cases have already been brought in Louisiana's state courts challenging this Executive Order under state law, and as of today, courts in two of those cases have denied temporary restraining orders. *See Nat'l Council of Jewish Women v. Landry*, No. C-777814 (La. 19th Jud. Dist. Ct. May 1, 2026) (denying TRO); *Sims v. Landry*, No. C-777816 (La. 19th Jud. Dist. Ct. May 1, 2016) (denying TRO); *see also Jordan v. Landry*, No. C-777837 (La. 19th Jud. Dist. Ct.) (pending). So far, the state courts have issued one written decision. Judge Bradley C. Myers of the Louisiana 19th Judicial District Court held:

> The United States District Court for the Western District of Louisiana has issued an injunction prohibiting the State of Louisiana "from using SB8's map of congressional districts for any election." Executive Order JML 26-038 simply complies with the mandate of the Federal Court. In addition, despite the apparent confusion created by the timing of the Supreme Court's decision in *Callais* the plaintiffs have failed to establish that immediate and irreparable injury will result.

Ex. C (internal citation omitted). Likewise, Judge Chip Moore, also of the Louisiana 19th Judicial District Court, issued a minute entry, holding that "the governor has the authority to suspend the upcoming election to protect the electoral process. Holding an election with an unconstitutional map is like applying fresh paint to

18

rotten wood." Ex. D. The Governor thus has properly exercised his state statutory authority to modify elections in response to declared emergencies.

Even if the Governor had violated state law (he emphatically has not), that is no basis for relief in federal court. "[F]ederal courts lack[] jurisdiction to enjoin [] state institutions and state officials on the basis of [] state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124–25 (1984). The Court should deny Plaintiffs' state-law attacks on the Executive Order.

**3.** Plaintiffs' Elections Clause claim likewise fails. The Elections Clause, U.S. Const. art. I, § 4, cl. 1, grants state legislatures authority to prescribe the "Times, Places and Manner of holding Elections" for Congress. Plaintiffs contend that the Governor has usurped that legislative authority by modifying the election schedule through executive action. But this argument ignores a critical fact: It was the Legislature itself that delegated to the Governor the authority to declare election emergencies and modify the timing and manner of elections in response. *See* La. R.S. 18:401.3.

The Elections Clause does not prohibit such delegations of state authority. To the contrary, that clause permits States to structure their own election-administration regimes, including by assigning implementation to "other entities." *See Corman v. Torres*, 287 F. Supp. 3d 558, 573 (M.D. Pa. 2018) (citing *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 807–08 (2015)). Here, the Legislature's grant of emergency election authority provides both a clear policy directive and meaningful constraints on the Governor's discretion. The Governor's

19

Executive Order thus reflects, not usurps, the Legislature's policy judgment and falls squarely within the authority the Legislature conferred. Plaintiffs' Elections Clause claim fails as a matter of law.

**4.** Plaintiffs remaining federal claim, that the Executive Order is preempted by the federal election-timing statutes, 2 U.S.C. §§ 1, 7, is equally flawed. The text of those statutes governs only general elections; it is silent as to primary elections. For that reason, state officials across the fifty States determine the dates of primary elections in accordance with their own procedures. *See Tex. Democratic Party*, 961 F.3d at 411 (quoting *Storer v. Brown*, 415 U.S. 724, 729–30 (1974)). Since there can be no federal preemption of state procedures for primary elections, this claim fails.

That is especially so here since the Governor and the Legislature are working together *in accordance* with the federal and Louisiana Constitutions and the Supreme Court's decision in *Reynolds v. Sims*, 377 U.S. 533 (1964). *Reynolds* directs courts to give States an "adequate opportunity" to "reapportion according to federal constitutional requisites" when its congressional district map is found to be deficient under federal law. *Id.* at 586. The Executive Order itself opens the way for precisely this legislative action. The actions of the Governor and Secretary to declare an emergency and modify the election schedule accordingly are wholly consistent with the federal Constitution, the Louisiana Constitution, Louisiana statutes, and existing federal court orders.

*Foster v. Love*, 522 U.S. 67 (1997), is not to the contrary. There, the Supreme Court held that "the federal statutes" establishing "a uniform federal election day"

20

preempted a state statute deeming a candidate "elected" when he "receive[d] a majority of the votes … in a primary election" because the State conducted the primary election before the uniform election day. *Id.* at 70, 73. That is not what is happening here. The emergency declaration and Executive Order were issued expressly to comply with federal law as established by the Supreme Court and the Western District, not evade it.

**5.** Plaintiffs' Fifteenth Amendment claim fares no better. That Amendment prohibits only the denial or abridgment of the right to vote "on account of race," not the uniform administration of a facially neutral election procedure. U.S. Const. amend. XV, § 1. To state such a claim, Plaintiffs must show that the emergency declaration and Executive Order were "motivated by a discriminatory purpose." *Callais*, 2026 WL 1153054, at \*12 (quoting *Reno v. Bossier Parish School Bd.*, 520 U.S. 471, 481 (1997)); *see also City of Mobile v. Bolden*, 446 U.S. 55, 65 (1980) (plurality op.) (holding that the Fifteenth Amendment does not reach state action absent "purposefully discriminatory denial or abridgment by government of the freedom to vote"); *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–66 (1977); *Kirksey v. Bd. of Supv'rs of Hinds Cnty.*, 554 F.2d 139, 143 (5th Cir. 1977) (en banc) (applying purposeful-discrimination standard to Fifteenth Amendment challenge).

Plaintiffs cannot make that showing here. The Executive Order draws no racial classifications, imposes no race-based distinctions, and applies equally to all voters and candidates without regard to race. It temporarily postpones a single set of

21

congressional elections to give the State time to comply with a federal court injunction prohibiting the use of SB8. A uniform, remedial measure taken to comply with a federal court order is not a denial or abridgment of the right to vote, much less one undertaken intentionally "on account of race." *Cf. Chisom v. Roemer*, 501 U.S. 380, 406, 408–09 (1991) (Scalia, J., dissenting) (observing that the Fifteenth Amendment targets purposeful racial barriers to voting, not race-neutral procedural measures). Because Plaintiffs allege no disparate treatment, no racial classification, and no purposeful discrimination, their Fifteenth Amendment claim fails as a matter of law. *See Bolden*, 446 U.S. at 62. In sum, Plaintiffs are not substantially likely to succeed on the merits.

**B. The Balance of the Equities Cuts Decisively Against an Injunction.**

Plaintiffs will suffer no irreparable injury if the Court does not mandate that the State use the unconstitutional map for the congressional primary. The Executive Order does not deprive anyone of their constitutional right to vote; it seeks to restore those rights. Once the State completes the process of enacting a constitutional map for the congressional primary, it will hold that election based on that new map, and every voter will have the opportunity to vote. For the remaining contests on the ballot, every voter has the opportunity to vote in the election that is already underway. State officials' handling of the situation—with a clear statement from the Secretary of State that "[a]ll other races on the ballot, besides the U.S. House races, will continue as scheduled"—does not "suppress" or "confuse" voters. Press Release, La. Sec'y of State Nancy Landry, *Louisiana U.S. House of Representatives Races Suspended Early: Voting Begins Saturday for All Other Races* (Apr. 30, 2026), https://perma.cc/4DKN-

22

4Y6D. Plaintiffs' claims of voter suppression and disenfranchisement therefore ring hollow. Compl. ¶¶ 25, 41.

Worse, judicial intervention through a disfavored, mandatory injunction requiring the State to conduct an unconstitutional election and disobey the Western District's injunction would irreparably harm Defendants. *See Tex. League of United Latin Am. Citizens v. Hughs*, 978 F.3d 136, 149 (5th Cir. 2020) ("When a district court's injunction prevents a State from effectuating its own election procedures, put in place by elected officials, it suffers irreparable harm."). Mandatory injunctions are particularly disfavored. Unlike prohibitory injunctions, which merely preserve the status quo, mandatory injunctions alter the status quo and command an affirmative act. *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976). Courts therefore apply a heightened standard,  requiring the movant to demonstrate that "the facts and law clearly favor the moving party." *Id.*

Plaintiffs have not met (and cannot meet) that exacting standard here, as they ask this Court to override both the Supreme Court's opinion and the Western District's injunction to compel state officials to administer an unconstitutional election. Their requested injunction would not merely preserve existing election procedures; it would require this Court to restart a congressional election under a map the Supreme Court has held unconstitutional and the Western District has enjoined. It is precisely the sort of extraordinary relief courts refuse to grant.

Furthermore, the Louisiana Legislature is currently in session and actively considering legislation addressing both congressional redistricting and the

23

administration of primary elections. That ongoing legislative process is the mechanism the Supreme Court has directed that States and federal courts follow when remedying unconstitutional districting plans. *See Reynolds*, 377 U.S. at 586 (affording States an "adequate opportunity" to enact a constitutional plan). Judicial intervention at this moment would short-circuit that process, harm federalism and the State's sovereign prerogative to make the first attempt at a remedial map, and risk producing conflicting or unworkable directives. The balance of the equities weighs strongly against an injunction.

## C. An Injunction Is Not in the Public Interest.

The *Callais* proceedings are still being litigated before the Western District's three-judge court, the State is still subject to that court's injunction, and the Supreme Court just issued its Judgment, "remand[ing']" "the cases" (referring to the consolidated *Callais* and *Robinson* cases) to the Western District of Louisiana for "proceedings consistent with the opinion of [the Supreme] Court." *Callais*, 2026 WL 1153054, at *18. On remand, the Western District advised last week that it will give "[t]he State of Louisiana … the opportunity to enact a Constitutionally compliant map consistent with the Supreme Court's opinion in *Louisiana v. Callais*, 608 U.S. __ (2026) and [the Western District's prior] Injunction" and that the State will have to explain to that court "how the State intends to comply with the Supreme Court's opinion in *Louisiana v. Callais* and this Court's Injunction within three (3) days of receipt by this Court of a certified copy of the Supreme Court's Judgment." Order, *Callais*, No. 3:24-cv-00122 (W.D. La., Apr. 30, 2026), ECF 261.

24

Meanwhile, Plaintiffs ask this Court to require the State to proceed with elections under SB8 that the Supreme Court just invalidated and the Western District has expressly enjoined, and to nullify the State's efforts to pause those elections pending adoption of a constitutional map and process. Allowing this collateral attack on the Western District's injunction creates an imminent risk of conflicting federal directives—one prohibiting and the other mandating the use of SB8 in the congressional primary. Principles of comity, judicial economy, orderly administration of justice, and public confidence in elections and the judiciary all strongly counsel against such fragmentation. For this Court to restart early voting for the congressional primary under an unconstitutional map two-thirds of the way through the early voting process would create confusion and chaos and undermine the integrity of the courts without any credible or feasible solution.

The congressional primary election has already been halted, as a logical and appropriate reaction to the Supreme Court's opinion and the Western District's injunction. All three of those actions—the Supreme Court's opinion, the Western District's injunction, and the Governor's Executive Order—have been widely reported. Plaintiffs' suggestion that the Court force the State to conduct a congressional election that Louisiana voters know the Supreme Court said was unconstitutional and the Western District enjoined as such would effectively disenfranchise voters. It is hard to imagine a request for injunctive relief that cuts more deeply against the public interest in credible elections and the integrity of the electoral and judicial systems.

## CONCLUSION

For all these reasons, the Court should deny Plaintiffs' request for injunctive relief.

Dated: May 5, 2026

Respectfully Submitted,

Elizabeth B. Murrill
Attorney General of Louisiana

*/s/ Carey Tom Jones*
Carey Tom Jones (LA #07474)
Office of the Attorney General
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70804
(225) 326-6000 phone
(225) 326-6098 fax
jonescar@ag.louisiana.gov

*Counsel for Defendants*

26