# EXHIBIT A

Cite as: 608 U. S. \_\_\_\_ (2025)    1

ALITO, J., concurring

# SUPREME COURT OF THE UNITED STATES

No. 25A1197 (24–109 and 24–110)

PHILLIP CALLAIS, ET AL., APPLICANTS *v.*
LOUISIANA, ET AL.

ON APPLICATION TO ISSUE THE JUDGMENT FORTHWITH

[May 4, 2026]

To permit the losing party time to file a petition for re-hearing, the Clerk of Court ordinarily waits 32 days after the entry of the Court's judgment to send the opinion and a certified copy of the judgment to the clerk of the lower court. Sup. Ct. Rule 45.3. This period is subject to adjustment; the default applies "unless the Court or a Justice shortens or extends the time." *Ibid.* The Callais appellees have asked for the Clerk to issue the judgment forthwith so that "in the event of a judicial remedy," the District Court may "oversee an orderly process." App. 3. Appellant Louisiana does not oppose this application. And while the Robinson appellants oppose it, they have not expressed any intent to ask this Court to reconsider its judgment. Thus, the application to issue the judgment forthwith presented to JUSTICE ALITO and by him referred to the Court is granted.

JUSTICE ALITO, with whom JUSTICE THOMAS and JUSTICE GORSUCH join, concurring.

The dissent in this suit levels charges that cannot go un-answered. The dissent would require that the 2026 con-gressional elections in Louisiana be held under a map that has been held to be unconstitutional.\* The dissent does not claim that it is now too late for the state legislature or the District Court to adopt a new map that complies with the

---

\*That constitutional question was argued and conferenced nearly seven months ago.

2                    CALLAIS *v.* LOUISIANA

ALITO, J., concurring

Constitution.  Nor does the dissent assert that it is not feasible for the elections to be held under such a map.  Instead, the dissent offers two reasons for its proposed course of action.  One is trivial at best, and the other is baseless and insulting.

The first is compliance with the 32-day default rule set out in this Court's Rule 45.3, but as the Court's order explains, there is good reason to depart from the default rule here.  The principal reason for the 32-day default rule is to give a losing party time to prepare a petition for rehearing.  But here, the Robinson appellees have not expressed an intent to file such a petition, much less set out any ground on which a petition might be based.  And the need for prompt action by this Court is clear.  The date scheduled for the beginning of early voting in the primary election has already passed.  The congressional districting map enacted by the legislature has been held to be unconstitutional, and the general election will be held in just six months.

The second reason offered by the dissent is that we should allow the 32-day period to run out in order to "avoid the appearance of partiality."  *Post*, at 3 (opinion of JACKSON, J.).  But the dissent does not explain why its insistence on unthinking compliance with Rule 45.3's default rule does not create the appearance of partiality (by running out the clock) on behalf of those who may find it politically advantageous to have the election occur under the unconstitutional map.

The dissent goes on to claim that our decision represents an unprincipled use of power.  See *post*, at 4 ("And just like that, those principles give way to power").  That is a groundless and utterly irresponsible charge.  What principle has the Court violated?  The principle that Rule 45.3's 32-day default period should never be shortened even when there is good reason to do so? The principle that we should never take any action that might unjustifiably be criticized as partisan?

Cite as: 608 U. S. ____ (2026)                    3

ALITO, J., concurring

The dissent accuses the Court of "unshackl[ing]" itself from "constraints." *Post*, at 4.  It is the dissent's rhetoric that lacks restraint.

Cite as: 608 U. S. ____ (2026)    1

JACKSON, J., dissenting

# SUPREME COURT OF THE UNITED STATES

———

No. 25A1197 (24–109 and 24–110)

———

## PHILLIP CALLAIS, ET AL., APPLICANTS *v.* LOUISIANA, ET AL.

ON APPLICATION TO ISSUE THE JUDGMENT FORTHWITH

[May 4, 2026]

JUSTICE JACKSON, dissenting.

The Court's decision in these cases has spawned chaos in the State of Louisiana.

Louisiana's primary elections were scheduled to take place on May 16, 2026. Accordingly, the State mailed ballots to overseas and military voters on April 1, and to other voters who qualified to vote by mail on April 26. By April 29—the date on which the Court released its decision holding that Louisiana's current congressional map is an unconstitutional gerrymander, see *Louisiana* v. *Callais*, 608 U. S. ___ (2026)—some Louisiana voters had already mailed back their filled-in ballots.

The very next day, Louisiana's Governor declared that *Callais* "effectively revives" the lower court's prior injunction against the current electoral map, and suspended the ongoing primary elections for seats in the U. S. House of Representatives. La. Exec. Order No. JML 26–038 (Apr. 30, 2026). For its part, the three-judge court below declared that, due to *Callais*, "Louisiana will be afforded the opportunity to enact a Constitutionally compliant map" right now—for the election in progress—and ordered the State to file a brief "outlining how [it] intends to comply with" the *Callais* decision within three days. Order in *Callais* v. *Landry*, No. 24–cv–122 (WD La.), ECF Doc. 261, p. 1. Apparently, neither the Governor nor the three-judge court viewed themselves as limited by the fact that this Court had

yet to issue its certified judgment in these cases; in the ordinary course, we do not do so until at least 32 days after the opinion is released. See this Court's Rule 45.3.[1]

So, new litigation followed. A candidate and Louisiana voters who have already submitted their ballots filed suits against the Governor and the Secretary of State, asserting that, whatever might happen to Louisiana's congressional map in the future, *this* election is already underway and must continue pursuant to the current maps. See, *e.g.*, Complaint in *Garcia* v. *Landry*, No. 26–cv–471 (MD La.), ECF Doc. 1; Emergency Petition for Injunctive Relief in *National Council of Jewish Women* v. *Landry*, No. C–777814 (La. 19th Jud. Dist., May 1, 2026). Meanwhile, to facilitate Louisiana's midstream redistricting rush, appellees now ask us to expedite release of the certified judgment in *Callais*. Application 2–3.

These post-*Callais* developments have a strong political undercurrent. Louisiana's hurried response to the *Callais* decision unfolds in the midst of an ongoing statewide election, against the backdrop of a pitched redistricting battle among state governments that appear to be acting as proxies for their favored political parties.[2] And as always, the Court has a choice. By my count, we have granted an application to issue the judgment forthwith over a party's

_____

[1] In today's order, the Court offers that "Louisiana does not oppose [the *Callais* plaintiffs'] application," suggesting that this is a point in favor of the Court's decision to grant the request. *Ante,* at 1 (*per curiam*). But the reason that Louisiana "takes no position on the *Callais* plaintiffs' request" is that neither the Governor nor the Legislature views the State's ability to "immediately produce a constitutional map and electoral process" as "contingent upon when this Court transmits its opinion and judgment." Louisiana's Response to Application 1–2.

[2] See D. Lieb, A Redistricting Battle Among States Has Reshaped the US House Map Ahead of the Midterm Election, Associated Press, Apr. 30, 2026, https://apnews.com/article/redistricting-congress-gerrymander-trump-4c5c98bec6af054d13b6275b6917bc86 (archived at https://perma.cc/RVP9–MN3W).

JACKSON, J., dissenting

objection only twice in the last 25 years. See *Whole Woman's Health* v. *Jackson*, No. 21A220, 2021 WL 5931622 (Dec. 16, 2021); Order in *Adoptive Couple* v. *Baby Girl*, No. 13A7, etc. (June 28, 2013). To avoid the appearance of partiality here, we could, as per usual, opt to stay on the sidelines and take no position by applying our default procedures.

But, today, the Court chooses the opposite. Not content to have decided the law, it now takes steps to influence its implementation. The Court's decision to buck our usual practice under Rule 45.3 and issue the judgment forthwith is tantamount to an approval of Louisiana's rush to pause the ongoing election in order to pass a new map.[3]

And make no mistake: That course of action does not follow from the *Callais* decision itself. The question whether our decision should affect the map to be used in the *ongoing* primaries raises a host of legal and political questions that are entirely independent of the issue in *Callais*. Among the legal ones, there is the Court's previous insistence that— even at the cost of letting partisan gamesmanship corrupt our democracy, see *Rucho* v. *Common Cause*, 588 U. S. 684, 721 (2019) (KAGAN, J., dissenting)—courts should not "'risk assuming political . . . responsibility for a [partisan map-drawing] process that often produces ill will and distrust,'"

---

[3] Contrary to JUSTICE ALITO's charges, my conclusion here does not "require that the 2026 congressional elections in Louisiana be held under a map that has been held to be unconstitutional." *Ante,* at 1 (opinion concurring in grant of application to issue judgment forthwith). But he is correct to observe that I am neither "claim[ing] that it is now too late for the state legislature or the District Court to adopt a new map that complies with the Constitution," nor "assert[ing] that it is not feasible for the elections to be held under such a map." *Id.*, at 1–2. Indeed, my preference is for the Court to stay out of all this, and the best way to do that is to stick with our default procedures. It is the majority that opts to do otherwise, thereby seeming to endorse Louisiana's efforts to change its congressional map during this primary election, before the pending lawsuits have a chance to play out.

4                    CALLAIS *v.* LOUISIANA

*id.*, at 704 (majority opinion).  There is also the so-called *Purcell* principle, which we invoked only five months ago to chide a federal district court for "improperly insert[ing] itself into an active primary campaign."  *Abbott* v. *League of United Latin American Citizens*, 607 U. S. ___, ___ (2025) (*per curiam*) (slip op., at 2).

The Court unshackles itself from both constraints today and dives into the fray.  And just like that, those principles give way to power.  Because this abandon is unwarranted and unwise, respectfully, I dissent.