**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| EUGENE COLLINS, JR., individually and on behalf of all others similarly situated; LINDSAY GARCIA; LAUREN JEWETT; JOHN DAY; CONRAD CABLE; MATT GROMLICH; JESSEE FLEENOR; LARRY FOY; DAN McKAY; CLEO FIELDS; JAMIE DAVIS; NICK ALBARES; and GARY CROCKETT,          Plaintiffs, | CIVIL ACTION<br><br>NO. 3:26-cv-00471-SDD-RLB<br><br>THREE-JUDGE PANEL<br>(28 U.S.C. § 2284) |

v.

JEFF LANDRY, in his official capacity
as Governor of the State of Louisiana;
ELIZABETH B. MURRILL, in her
official capacity as Attorney General
of the State of Louisiana; and
NANCY LANDRY, in her official
capacity as Secretary of State of the
State of Louisiana,
         Defendants.

### PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR EMERGENCY INJUNCTIVE RELIEF

*(Responding to Defendants' Opposition, ECF No. 18, Filed May 5, 2026)*

Plaintiffs respectfully submit this Reply in support of their Motion for Emergency Injunctive Relief. Defendants' Opposition (ECF No. 18) rests on a series of mischaracterizations: of the operative pleading, of the Plaintiffs, of the relief requested, of the Western District of Louisiana's order in Callais v. Landry, No. 3:24-cv-00122 (W.D. La.) (ECF No. 261), of the Supreme Court's recent procedural posture, and of the constitutional and statutory framework that governs this case. Properly framed, this action is not what Defendants describe. Plaintiffs do not ask this Panel to compel the State to violate any federal court order. Plaintiffs ask this Panel to

enjoin the specific and unconstitutional provisions of Executive Order JML 26-038 that go far beyond what any federal court has ordered, that selectively void cast ballots, that operatively remove duly nominated candidates from the November 3, 2026, general election ballot under La. R.S. § 18:410.9(A), and that selectively cancel a single set of contests on a multi-contest ballot while administering all others. On those questions, the State's Opposition is largely silent.

## I. INTRODUCTION AND SUMMARY OF REPLY

1. Defendants' Opposition is built on a single, recurring premise: that Plaintiffs ask this Panel to compel the State to conduct an election under a map the Supreme Court has invalidated. ECF No. 18 at 1, 3, 13–14, 22–25. That framing is not Plaintiffs' theory of the case. Plaintiffs' Amended Verified Complaint, filed May 3, 2026, presents thirteen Plaintiffs, three Defendants, and nine Counts addressed to specific provisions of Executive Order JML 26-038 that go beyond anything the Supreme Court or the Western District of Louisiana has ordered.

2. Plaintiffs' theory is straightforward. The Western District of Louisiana's Order of April 30, 2026 (ECF No. 261 in 3:24-cv-00122) prohibits the State from 'using SB8's map of congressional districts for any election.' ECF No. 18 at 1–2 (quoting Callais, ECF No. 261). Plaintiffs accept that prohibition. Plaintiffs do not challenge it. Plaintiffs do not ask this Panel to override it. What Plaintiffs challenge are the discrete, unconstitutional features of Executive Order JML 26-038 that operate beyond the Western District's prohibition: the selective cancellation of only the federal House primary while continuing the federal Senate, Louisiana Supreme Court, Public Service Commission, and Board of Elementary and Secondary Education primaries on the same ballot; the operative removal of duly nominated candidates from the November 3, 2026, general election ballot under La. R.S. § 18:410.9(A); and the selective voiding of cast votes in one contest on a multi-contest ballot.

3. Defendants' Opposition does not engage these issues. It does not engage Bush v. Gore, 531 U.S. 98 (2000), beyond a single citation for a proposition Bush v. Gore did not adopt. It does not engage Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), at all. It does not engage La. R.S. § 18:410.9(A) at all. It does not engage the operative removal of Plaintiffs

Lauren Jewett and Cleo Fields from the November 3, 2026, general election ballot at all. It does not engage the Class A / Class B comparator framework in which the State has, under the same statute and the same procedural mechanism, retained Justice Cade Cole, Justice Jay McCallum, and Connie Norris on the November 3, 2026, ballot while removing Plaintiffs Jewett, Fields, and similarly situated non-Plaintiff Mr. Clay Higgins. It does not engage the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301 et seq., at all.

4.    Defendants' Opposition further rests on procedural premises that, as of the date of this Reply, are formally contested. On May 6, 2026, the Three-Judge Panel of the United States District Court for the Western District of Louisiana entered an Order (Doc. 269 in 3:24-cv-00122-DCJ-CES-RRS) accepting Plaintiff Jewett's Motion to Intervene (Doc. 267) for briefing, setting a deadline of May 8, 2026 for additional motions to intervene by third parties, and setting a deadline of May 15, 2026 for oppositions or responses by enrolled parties. Defendants' Opposition treats the procedural posture as settled. It is not.

5.    This Reply addresses each of Defendants' six grounds for denial in turn. Part II addresses Defendants' jurisdictional arguments (sovereign immunity, standing, and mootness). Part III addresses Defendants' comity argument (declination of jurisdiction). Part IV addresses Defendants' invocation of Purcell v. Gonzalez. Part V addresses Defendants' arguments on the merits, with particular attention to Bush v. Gore, Logan, Foster v. Love, the Section 2 intent question, and the Class A / Class B comparator framework. Part VI addresses the balance of equities and the public interest. Part VII addresses the procedural reversals reflected in the Robinson Motion to Recall and the pending Motion to Vacate.

## II. DEFENDANTS' JURISDICTIONAL ARGUMENTS FAIL

### A. Attorney General Murrill Is Properly a Defendant.

6.    Defendants argue that Attorney General Murrill is immune from suit under Ex parte Young because she lacks 'connection with the enforcement of the Secretary's emergency declaration or the Governor's Executive Order.' ECF No. 18 at 6. The argument is factually wrong. As Defendants' own Opposition acknowledges, General Murrill issued the public statement on April 29, 2026, that 'state and federal law would not prevent the Legislature

from drawing a new map this year' and that 'judicial principles' might constrain a court's ability 'to create a new map close to an election.' Amended Verified Complaint ¶¶ 31, 41. General Murrill is also counsel of record for the State of Louisiana as Intervenor-Defendant in the Western District of Louisiana proceedings on remand from Callais. See Callais v. Landry, No. 3:24-cv-00122-DCJ-CES-RRS (W.D. La.), Attorney List (PACER, May 5, 2026) (identifying General Murrill's office as counsel of record for the State of Louisiana, Intervenor-Defendant). She is the chief legal officer of the State of Louisiana and has affirmatively committed her office to the defense of Executive Order JML 26-038.

7.  The Ex parte Young inquiry does not require a statutory enforcement duty in every conceivable doctrinal context. It requires 'some connection with the enforcement of the challenged act.' City of Austin v. Paxton, 943 F.3d 994, 997 (5th Cir. 2019). Attorneyb General Murrill's role as the State's chief legal officer, her public statements regarding Callais and its post-decision implementation, and her affirmative defense of Executive Order JML 26-038 establish the requisite connection. Plaintiffs respectfully submit that, even if the Panel were to determine that General Murrill is not properly joined under Ex parte Young, that determination would not affect the case's progress against the remaining Defendants. The relief sought against the Governor and the Secretary of State is comprehensive and does not depend on General Murrill's participation.

### B. Plaintiffs Have Article III Standing.

8.  Defendants' standing argument is that Plaintiffs cannot establish injury in fact because the Executive Order 'temporarily postpones a single set of primary contests' rather than 'denying any voter the right to vote.' ECF No. 18 at 7. The argument fails three times over.

9.  First, Plaintiffs Jewett and Fields are not voters whose primary has been postponed. They are nominees whose names have been operatively removed from the November 3, 2026, general election ballot under La. R.S. § 18:410.9(A). Plaintiff Jewett qualified by constituent-supported nominating petition under La. R.S. § 18:465 with well over two thousand (2,000) signatures of qualified Louisiana voters in the 1st Congressional District; she became the Democratic nominee following the post-qualifying withdrawal of James 'Jim' Long. Plaintiff Fields, the incumbent Black-preferred congressional Representative for the (former) 6th Congressional District, became the Democratic nominee as the sole

qualifier. Their injury is not 'a delay in the timing of one contest' (ECF No. 18 at 7); it is the **removal of their names from the November 3, 2026, general election ballot under operation of state law**. That is a concrete, particularized, and irreparable injury that Defendants' Opposition does not address.

10. Second, Plaintiffs Davis, Albares, and Crockett are candidates in the federal United States Senate primary that the State is administering as scheduled on May 16, 2026. Their contests are going forward; the federal House primary is not. The Executive Order's selective treatment of identically situated federal candidates, on the same ballot, on the same day, in primaries subject to the same constitutional framework, is an Equal Protection injury that satisfies Article III. See Bush v. Gore, 531 U.S. 98, 104–05 (2000) (the State 'may not, by later arbitrary and disparate treatment, value one person's vote over that of another').

11. Third, Plaintiffs Garcia, Day, Cable, Gromlich, Fleenor, Foy, and McKay are candidates in contested Democratic primaries on the May 16, 2026, ballot whose contests have been canceled. Their injury is the loss of the contest they qualified for. Plaintiff Eugene Collins, Jr., is a qualified voter whose ballot for the federal House contest will be selectively voided while his ballot for U.S. Senate, Louisiana Supreme Court, Public Service Commission, and Board of Elementary and Secondary Education will be counted. That is, differential treatment of identically situated voters within a single ballot. Bush v. Gore squarely identifies such differential treatment as a cognizable Article III injury supported by Equal Protection.

### C. Plaintiffs' Claims Are Not Moot.

12. Defendants argue that Plaintiffs' claims will be moot before this Court rules because the primary congressional election that Plaintiffs seek to modify will have already occurred.' ECF No. 18 at 9–10. The argument is internally inconsistent. The State has informed Louisiana voters that 'any votes cast in [the U.S. House] races will not be counted.' ECF No. 18 at 12 (quoting La. Sec'y of State Press Release, Apr. 30, 2026). That is the precise injury Plaintiffs seek to remedy. The injury is operative now and will continue past May 16, past June 27, and into the November 3, 2026, general election. Mootness requires the harm to have been fully resolved; here, the harm is ongoing and will continue indefinitely absent injunctive relief.

13. Defendants' mootness argument is also incorrect as to Plaintiffs Jewett and Fields. Their injury is the operative removal from the November 3, 2026, general election ballot under La. R.S. § 18:410.9(A). That removal will not be cured by the May 16 election passing without their contests being held. By contrast, every day that passes without judicial intervention compounds the harm: campaign organization is disrupted, fundraising is foreclosed, constituent engagement is interrupted, and the operational record supporting Plaintiffs' candidacies is degraded.

## III. PRINCIPLES OF COMITY DO NOT REQUIRE TRANSFER OR DISMISSAL

14. Defendants invoke the first-filed rule and principles of comity to argue that this Panel should decline jurisdiction in favor of the Western District. ECF No. 18 at 10–11. Plaintiffs have separately addressed this argument in their Opposition to the Motion to Transfer (filed May 5, 2026). The arguments there are incorporated by reference. The brief response is that the Western District litigation and the present action address fundamentally different questions.

15. The Western District's role on remand from Callais is to oversee the drawing of a constitutionally compliant remedial map. The present action's role is to evaluate the constitutional and statutory legitimacy of the State's executive response to Callais (i.e., Executive Order JML 26-038). Justice Jackson, dissenting in Callais v. Louisiana, No. 25A1197 (May 4, 2026), expressly framed this distinction:

> [T]hat course of action does not follow from the Callais decision itself. The question whether our decision should affect the map to be used in the ongoing primaries raises a host of legal and political questions that are entirely independent of the issue in Callais.

> 25A1197 (Jackson, J., dissenting), slip op. at 3 (emphasis added).

16. Justice Jackson identifies the present action by name, describing Garcia v. Landry, No. 26-cv-471 (M.D. La.), as a parallel post-Callais proceeding raising questions 'entirely independent of the issue in Callais.' Slip op. at 2–3. The State cannot simultaneously argue that this action is sufficiently disconnected from Callais to fall outside three-judge jurisdiction under 28 U.S.C. § 2284(a), while also arguing that this action is sufficiently connected to Callais to warrant transfer to the Western District panel administering the

apportionment remand. The State's arguments on transfer and three-judge jurisdiction are internally inconsistent and cannot both be sustained.

## IV. THE PURCELL PRINCIPLE CUTS AGAINST THE STATE, NOT AGAINST PLAINTIFFS

17.    Defendants invoke Purcell v. Gonzalez, 549 U.S. 1 (2006), arguing that judicial intervention in an active election cycle 'would sow confusion, chaos, and distrust.' ECF No. 18 at 11–13. The argument inverts Purcell. Purcell counsels against judicial alteration of established election rules close to an election. It does not license the State to alter those rules by executive order after voting has begun. As Justice Jackson observed in 25A1197:

> There is also the so-called Purcell principle, which we invoked only five months ago to chide a federal district court for 'improperly insert[ing] itself into an active primary campaign.'
>
> 25A1197 (Jackson, J., dissenting), slip op. at 3–4 (quoting Abbott v. League of United Latin American Citizens, 607 U.S. ___ (2025) (per curiam)).

18.    Plaintiffs do not seek judicial alteration of established election rules. Plaintiffs seek to preserve them. The May 16, 2026, closed party primary was scheduled by the Louisiana Legislature under Acts 2024, 1st Extraordinary Session, No. 1. The qualifying period concluded February 13, 2026. Absentee ballots were issued to qualified voters and to military and overseas voters protected by the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301 et seq., beginning April 1, 2026. By April 28, 2026, some voters had completed and returned their ballots. Voting was underway. The State has now, by executive order, changed the rules after voting began and votes cast.

19.    The Purcell principle exists to protect voters and election administrators from late-breaking judicial alterations to established procedures. The harm Purcell prevents is precisely the harm the State has inflicted here. An injunction restoring the status quo ante, by enjoining the unconstitutional features of JML 26-038, is the doctrinally appropriate response to the kind of mid-election disruption Purcell identifies as harmful. Defendants' invocation of Purcell as a shield for that disruption is doctrinal inversion.

## V. PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS

### A. The State's Reliance on the W.D. La. April 30 Order Is Misplaced.

20. Defendants' merits argument, throughout the Opposition, is that Executive Order JML 26-038 is required by the Western District's April 30, 2026 Order (ECF No. 261 in 3:24-cv-00122). That argument depends on the proposition that the Western District's Order mandates the specific operative provisions of the Executive Order: the selective cancellation of only the federal House primary, the operative removal of nominees from the November 3 ballot under § 18:410.9(A), and the selective voiding of cast ballots in one contest. The Western District's Order does no such thing.

21. The Western District's April 30, 2026, Order, as quoted by Defendants in their own Opposition, prohibits the State from:

> using SB8's map of congressional districts for any election.
>
> ECF No. 18 at 1–2, 8, 22, 24 (quoting Order, Callais v. Landry, No. 3:24-cv-00122 (W.D. La. Apr. 30, 2026), ECF No. 261).

22. That language is a prohibition. It is not a mandate. It tells the State what it cannot do. It does not tell the State what it must do. The Western District's prohibition on using SB8 leaves open every operational question about how the State should respond. The State could (a) administer the federal House primary under an alternative map drawn by the Legislature; the State has not. The State could (b) hold a constitutionally compliant federal House election concurrent with the November 3 general election under the Allen v. Milligan/LULAC v. Perry remedial model; the State has not. The State could (c) preserve the operative removal of Plaintiffs Jewett and Fields under La. R.S. § 18:410.9(A) by deeming their nominee status to attach to whatever remedial districts include their constituent base; the State has not. The State has chosen, instead, to impose the most aggressive available operational response, removing nominees, voiding cast ballots, and selectively canceling only one set of contests on the multi-contest ballot.

23. The Western District's prohibition on using SB8 does not require the State to take any of those operational steps. The State has chosen to take them. That choice is the State's, not the Western District's. The Executive Order is the State's policy response to the Western District's prohibition; it is not the prohibition itself. Plaintiffs' challenge is to the State's policy response, not to the prohibition. An injunction against the unconstitutional features

of the Executive Order does not violate the Western District's Order. It distinguishes the State's discretionary response from the federal court's mandate.

### B. Bush v. Gore and Logan Govern the Selective Voiding of Cast Ballots.

24.    Defendants' Opposition addresses Bush v. Gore in a single paragraph at page 16, asserting that the State 'treats all voters and all ballots identically' because 'no votes cast under the invalid map will be counted.' ECF No. 18 at 16. The argument rephrases the question to make the State's preferred answer self-evident, but it is wrong. The State has done the opposite of treating all voters and all ballots identically. The State has made a deliberate decision to count ballots cast for U.S. Senate, Louisiana Supreme Court (1st District), Public Service Commission (Districts 1 and 5), Board of Elementary and Secondary Education (1st District), and the five proposed constitutional amendments, while voiding the federal House contest on the same ballot, completed by the same voter, on the same day. That is differential treatment of contests within a single ballot.

25.    Bush v. Gore is squarely on point. The Court held that 'the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another.' 531 U.S. at 104–05. The Court applied this principle to the differential standards applied within Florida's recount, but the principle is broader: differential treatment of votes on a single ballot, where the State has not articulated a rational basis tied to administrative necessity, is per se an Equal Protection violation. The State here has not articulated such a basis. The State has not claimed it lacks the administrative capacity to count the federal House contest on already-cast ballots. The State has not claimed the ballots are physically unreadable. The State has simply chosen not to count them. That choice is differential, arbitrary, and without procedural due process protection.

26.    Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), holds that once a property interest has vested through procedural completion of an act, it cannot be retroactively voided without due process. 455 U.S. at 432–34. Plaintiff Eugene Collins, Jr., and similarly situated absentee voters who completed and returned their ballots before April 30, 2026, had a vested procedural interest in having their votes counted. The Executive Order purports to void that vested interest retroactively, on a contest-by-contest basis, without process and without an articulated rational basis. The State's Opposition does not address

Logan at all. It is the controlling procedural-due-process precedent for cast-ballot voiding, and it is unrebutted.

### C. Foster v. Love Squarely Governs Federal Election Timing.

27. Defendants argue that Foster v. Love, 522 U.S. 67 (1997), is limited to general elections because 2 U.S.C. §§ 1, 7 govern only general elections. ECF No. 18 at 20–21. The argument misreads Foster. Foster, decided unanimously, struck down Louisiana's open primary statute as applied to federal contests because the state scheme 'concluded' the federal election before the federal election day established by 2 U.S.C. § 7. 522 U.S. at 71–73. Foster's reasoning extends to any state scheme that operates to remove federal candidates from the federal election-day ballot in a manner inconsistent with the federal-timing framework.

28. The Executive Order does precisely that. It operatively removes Plaintiffs Jewett and Fields, and similarly situated non-Plaintiff Mr. Higgins, from the November 3, 2026, federal election day ballot, on a basis inconsistent with the uniform federal election timing framework. Foster bars the State from interfering with federal election timing through any state-law mechanism, including a state-law nominee-status framework like § 18:410.9(A). The State has done that here. Foster controls.

### D. The Class A / Class B Comparator Framework Is Equal Protection on Its Face.

29. Defendants' Opposition does not address La. R.S. § 18:410.9(A) at all. The omission is significant. Section 18:410.9(A) provides that a candidate becomes the party's nominee for the general election ballot upon (i) sole-qualification at the close of qualifying or (ii) becoming the sole remaining qualifier following the post-qualifying withdrawal of all others. The mechanism is facially neutral: it applies the same procedural rule to every office subject to closed party primaries.

30. The Executive Order applies that mechanism selectively. The State has, on April 30, 2026, retained on the November 3, 2026 ballot, as nominees under § 18:410.9(A), Justice Cade R. Cole (Republican, Louisiana Supreme Court 3rd District), Justice Jay B. McCallum (Republican, Louisiana Supreme Court 4th District), and Connie Norris (Democrat, Public Service Commission District 1). Under the same statute, on the same date, the State has

operatively removed Plaintiffs Jewett and Fields, and similarly situated non-Plaintiff Mr. Higgins, from the November 3, 2026, ballot. The differential treatment falls precisely on the federal House nominees. Equal Protection requires a rational basis for that differential treatment. The State's Opposition does not provide one.

### E. UOCAVA and HAVA Preempt the Selective Voiding of Federally Protected Ballots.

31.    Defendants' Opposition does not address the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301 et seq., or the Help America Vote Act, 52 U.S.C. § 20901 et seq., at all. These statutes establish federal-law protections for the absentee voting rights of military servicemembers, their spouses and dependents, and United States citizens residing outside the United States. The Executive Order's selective voiding of the federal House contest on UOCAVA-protected ballots is preempted by federal statute under the Supremacy Clause, U.S. Const. art. VI, cl. 2. The State's complete failure to address this argument forfeits any opposition to it on the merits.

### F. The Section 2 and Fifteenth Amendment Counts Require Discovery, Not Resolution on Brief.

32.    Defendants argue that Plaintiffs cannot establish discriminatory intent because the Executive Order is facially neutral. ECF No. 18 at 21–22. The argument prematurely resolves a fact-intensive question. Under Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 266–68 (1977), and Louisiana v. Callais, 608 U.S. ___ (2026), discriminatory intent is demonstrable through five categories of evidence: impact, historical background, sequence of events, departures from normal procedural sequence, and contemporaneous statements. Plaintiffs have alleged each category in the Amended Verified Complaint. The intent question is appropriately resolved on the developed factual record, not on the Defendants' assertion of facial neutrality.

33.    Plaintiffs note further that the Executive Order's selective scope falls precisely on the federal House contests, including the contest involving the only Black-preferred congressional incumbent of the (former) majority-Black 6th District. The temporal sequence places the Executive Order's issuance on April 30, 2026, the day after the Supreme Court's decision in Callais and before the certified judgment had even arguably

issued under Supreme Court Rule 45.3. The Arlington Heights factors of departures from normal procedural sequence and contemporaneous statements are squarely implicated. Plaintiffs respectfully submit that the Section 2 and Fifteenth Amendment Counts survive preliminary review and require development on the merits.

## VI. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR INJUNCTIVE RELIEF

34.    Defendants argue that the balance of equities favors denial because an injunction would 'override both the Supreme Court's opinion and the Western District's injunction.' ECF No. 18 at 23. As Section V(A) above demonstrates, an injunction against the unconstitutional features of the Executive Order does not override either court's ruling. The Western District has prohibited the State from using SB8; an injunction against the State's selective and unconstitutional response to that prohibition leaves the prohibition fully in force.

35.    Plaintiffs' irreparable injury is concrete and ongoing. Plaintiffs Jewett and Fields are operatively removed from the November 3, 2026, ballot. Plaintiff Eugene Collins, Jr., and similarly situated voters have already cast ballots in federal House contests that the State will void. Plaintiffs Davis, Albares, and Crockett are running in federal Senate primaries on May 16; their candidacies are subject to differential administration that the State has not justified. The aggregate disenfranchisement, by operation of the Executive Order, exceeds 578,848 registered Louisiana voters: 129,612 Democratic voters in the 1st Congressional District; 205,660 Republican voters in the 3rd Congressional District; and 243,576 Democratic voters in the 6th Congressional District. Amended Verified Complaint ¶ 56. That aggregate harm is not speculative. It is happening now.

36.    The public interest favors orderly enforcement of constitutional election standards, full counting of ballots already cast, and preservation of duly nominated candidates' positions on the November 3, 2026, general election ballot. The public interest does not favor the selective cancellation of federal elections after voting has begun, the selective voiding of cast ballots, or the operative removal of nominees by executive fiat. Justice Jackson's dissent in 25A1197 captures the public-interest harm: 'The Court's decision in these cases has spawned chaos in the State of Louisiana.' Slip op. at 1. The Executive Order is the

State's contribution to that chaos. An injunction against its unconstitutional features begins the work of restoring order.

## VII. THE PROCEDURAL FOUNDATION OF DEFENDANTS' OPPOSITION IS FORMALLY CONTESTED

### *The W.D. La. Panel's May 6, 2026 Order on the Motion to Vacate.*

37.    Subsequent to the filing of Defendants' Opposition, the Three-Judge Panel of the United States District Court for the Western District of Louisiana entered an Order on May 6, 2026 (Doc. 269 in 3:24-cv-00122-DCJ-CES-RRS) addressing the Motion to Vacate (Doc. 262) filed by the Robinson Intervenors, which had sought to strike the Western District's April 30, 2026 Order (Doc. 261). The Three-Judge Panel denied the Motion to Vacate as moot, citing the Supreme Court's May 4, 2026, issuance of judgment in 25A1197 (Doc. 265). Doc. 269. The same Order of May 6, 2026, also accepted Plaintiff Jewett's Motion to Intervene (Doc. 267, filed May 5, 2026), set a deadline of May 8, 2026, for additional motions to intervene by third parties, and set a deadline of May 15, 2026, for oppositions or responses by enrolled parties. Plaintiffs note these procedural developments only to keep this Panel informed of the parallel proceedings before the Western District. Plaintiffs do not, by this Reply, take any position on the merits of any matter pending before the Western District Panel.

## VIII. CONCLUSION

38.    Plaintiffs do not ask this Panel to override the Supreme Court. Plaintiffs do not ask this Panel to override the Western District. Plaintiffs ask this Panel to exercise its jurisdiction over a state Executive Order that goes far beyond what any federal court has ordered, that selectively cancels one set of contests on a multi-contest ballot, that operatively removes duly nominated candidates from the November 3, 2026, general election ballot under La. R.S. § 18:410.9(A), and that selectively voids cast ballots in violation of Bush v. Gore, Logan, and the Uniformed and Overseas Citizens Absentee Voting Act. Defendants' Opposition does not address the operative pleading. It does not address the thirteen Plaintiffs. It does not address the nine Counts. It does not address Bush v. Gore or Logan in any meaningful way. It does not address La. R.S. § 18:410.9(A). It does not address

UOCAVA or HAVA. It addresses, exclusively, a strawman case in which Plaintiffs ask the Panel to compel the State to violate the Western District's injunction. That is not the Plaintiffs' case.

42.    Plaintiffs respectfully request that this Panel grant their Motion for Emergency Injunctive Relief and enter an Order (a) enjoining the operative effect of Executive Order JML 26-038 to the extent it cancels the May 16, 2026 federal House primary while continuing the federal Senate, Louisiana Supreme Court, Public Service Commission, and Board of Elementary and Secondary Education primaries on the same ballot; (b) enjoining the operative removal of Plaintiffs Jewett and Fields and similarly situated non-Plaintiff Mr. Higgins from the November 3, 2026, general election ballot under La. R.S. § 18:410.9(A); (c) enjoining the selective voiding of cast ballots in the federal House contest while ballots in other contests on the same multi-contest ballot are counted; (d) directing the Defendants to preserve the federal House contests on returned absentee ballots consistent with UOCAVA and HAVA; and (e) granting such further and additional relief as the Panel deems just and proper.

RESPECTFULLY SUBMITTED,

*/s/ Jamar Lanier Ennis*
JAMAR LANIER ENNIS
La. Bar Roll #37455
**Ennis Law Firm, LLC**
412 N. 4th Street, Suite 102
Baton Rouge, Louisiana 70801
Phone: (225) 400-6600
Fax: (225) 308-2053

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 7th day of May, 2026, a copy of the foregoing Plaintiffs' Reply Memorandum in Support of Motion for Emergency Injunctive Relief was served upon all counsel of record through the Court's CM/ECF system.

RESPECTFULLY SUBMITTED,

*/s/ Jamar Lanier Ennis*
JAMAR LANIER ENNIS
La. Bar Roll #37455
**Ennis Law Firm, LLC**
412 N. 4th Street, Suite 102
Baton Rouge, Louisiana 70801
Phone: (225) 400-6600
Fax: (225) 308-2053
Counsel of Record for Plaintiffs