**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| EUGENE COLLINS, JR., individually and on behalf of all others similarly situated; LINDSAY GARCIA; LAUREN JEWETT; JOHN DAY; CONRAD CABLE; MATT GROMLICH; JESSEE FLEENOR; LARRY FOY; CLEO FIELDS; JAMIE DAVIS; NICK ALBARES; and GARY CROCKETT, Plaintiffs, | CIVIL ACTION<br><br>NO. 3:26-cv-00471-SDD-RLB<br><br>THREE-JUDGE PANEL<br>(28 U.S.C. § 2284) |

v.

JEFF LANDRY, in his official capacity
as Governor of the State of Louisiana;
ELIZABETH B. MURRILL, in her
official capacity as Attorney General
of the State of Louisiana; and
NANCY LANDRY, in her official
capacity as Secretary of State of the
State of Louisiana,
                    Defendants.

### PLAINTIFFS' BRIEF IN SUPPORT OF THREE-JUDGE DISTRICT COURT JURISDICTION UNDER 28 U.S.C. § 2284(a)
*(In Response to the Panel's Order of May 4, 2026, Doc. 15)*

Plaintiffs Eugene Collins, Jr., et al., through undersigned counsel of record, respectfully submit this Brief in response to the Panel's Order of May 4, 2026 (Doc. 15), directing both parties to brief on or before May 7, 2026 the question whether the Plaintiffs' Complaint presents grounds requiring adjudication by a district court of three judges, pursuant to 28 U.S.C. § 2284(a). For the reasons set forth herein, Plaintiffs respectfully submit that the Complaint plainly presents such grounds, that this Three-Judge Panel was properly convened by the Order of May 1, 2026 (Doc. 8), and that this Panel should retain jurisdiction over this action.

Plaintiffs further respectfully observe that, since the Panel's May 1, 2026, Order convening this Panel, three additional procedural developments bear directly on the Section 2284(a) inquiry. First, on May 4, 2026, the Supreme Court of the United States entered an Order in Callais, et al. v. Louisiana, et al., No. 25A1197, granting the Callais appellees' application to issue the certified judgment forthwith, with a concurring opinion by Justice Alito (joined by Justices Thomas and Gorsuch) and a dissenting opinion by Justice Jackson. Plaintiffs filed a Notice of Supplemental Authority on May 5, 2026, bringing that Order to this Panel's attention. Second, on May 6, 2026, the Three-Judge Panel of the United States District Court for the Western District of Louisiana entered an Order (Doc. 269 in Callais v. Landry, No. 3:24-cv-00122-DCJ-CES-RRS) accepting Plaintiff Lauren Jewett's Motion to Intervene (Doc. 267) for briefing, setting a deadline of May 8, 2026, for additional motions to intervene by third parties, and setting a deadline of May 15, 2026, for oppositions or responses by enrolled parties. Each of these developments supports, rather than undermines, the conclusion that this Panel should retain jurisdiction over this action under 28 U.S.C. § 2284(a).

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

1.  The question presented by the Panel's May 4, 2026, Order is jurisdictional, doctrinal, and structural. Plaintiffs respectfully submit that the answer is clear under controlling law. The Amended Verified Complaint filed in this matter on May 3, 2026, challenges conduct that is causally and substantively connected to the apportionment of Louisiana's congressional districts within the meaning of 28 U.S.C. § 2284(a). The constitutional and statutory claims presented are not 'wholly insubstantial and frivolous' within the meaning of Shapiro v. McManus, 577 U.S. 39, 44, 46 (2015). Accordingly, this action is one which Section 2284(a) requires to be heard and determined by a district court of three judges, and this Panel was properly convened by the Order of May 1, 2026.

2.  The argument proceeds in five Parts. Part II reviews the controlling statutory text, the narrow gatekeeping standard articulated in Shapiro, and the dispositive consequences for this Panel's jurisdiction. Part III demonstrates that this action challenges conduct directly connected to the apportionment of Louisiana's congressional districts, including, by reference to the Supreme Court's express recognition of this case in 25A1197 and to the Western District's Order of May 6, 2026 (Doc. 269), the parallel posture of these

proceedings. Part IV addresses the substantiality of the claims under Shapiro, demonstrating that each of the nine Counts of the Amended Verified Complaint comfortably exceeds the 'wholly insubstantial and frivolous' floor. Part V addresses structural considerations: the relationship between this Panel and the Three-Judge Panel of the United States District Court for the Western District of Louisiana presiding over the Robinson v. Ardoin / Callais remand, and the integrity of two distinct three-judge panels presiding over two distinct causes of action.

3. Plaintiffs respectfully request that this Panel enter an Order affirming the proper convocation of this Three-Judge Panel under 28 U.S.C. § 2284(a) and confirming the Panel's continuing jurisdiction over this action.

## II. THE CONTROLLING STATUTORY AND DOCTRINAL FRAMEWORK

### A. The Text of 28 U.S.C. § 2284(a).

4. Title 28, United States Code, section 2284(a) provides, in relevant part: 'A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body.' 28 U.S.C. § 2284(a) (emphasis added). The use of the mandatory verb 'shall' renders the three-judge convocation non-discretionary when the statutory predicate is satisfied. The statutory predicate is satisfied where an action 'challenges the constitutionality of the apportionment of congressional districts.'

5. The procedural mechanism for convening the Panel is set forth in 28 U.S.C. § 2284(b)(1), which requires the assigned single district judge, 'upon the filing of a request for three judges,' to 'immediately notify the chief judge of the circuit, who shall designate two other judges, at least one of whom shall be a circuit judge, to serve as members of the court.' That mechanism was executed here by the Order of May 1, 2026, (Doc. 8), under which Judge Stuart Kyle Duncan of the United States Court of Appeals for the Fifth Circuit, sitting by designation as Presiding Judge of this Panel; Chief Judge Shelly D. Dick of the United States District Court for the Middle District of Louisiana; and Judge Greg Guidry

of the United States District Court for the Eastern District of Louisiana, were duly constituted as the Three-Judge Panel under Section 2284.

**B. The Narrow Gatekeeping Standard Under Shapiro v. McManus.**

6.    The Supreme Court's decision in Shapiro v. McManus, 577 U.S. 39 (2015), establishes the scope of the assigned judge's role in evaluating whether a three-judge court is required. Shapiro holds that 'a three-judge court is not required where the district judge himself finds that the complaint is wholly insubstantial and frivolous.' Id. at 45 (citing Goosby v. Osser, 409 U.S. 512, 518 (1973)). The Court was emphatic that this standard is 'a low bar,' id. at 46, and that the assigned judge's role is to perform 'only an antecedent inquiry into the substantiality of the claim,' id., rather than to assess the merits.

7.    The Shapiro standard is substantially more deferential to the complaining plaintiff than the standards applicable to motions to dismiss under Rule 12(b)(6) or for summary judgment under Rule 56. A claim is 'wholly insubstantial and frivolous' only when 'prior decisions inescapably render the claims frivolous,' or when the claim is 'obviously without merit.' Shapiro, 577 U.S. at 45, 46 (citation omitted); accord Goosby, 409 U.S. at 518. Anything short of that triggers the Section 2284(a) mandate.

8.    The Shapiro Court was careful to clarify that the gatekeeping function is not an opportunity for the assigned single judge to engage in extensive merits review. 'When [the assigned] district judge concludes that the requirement is in fact satisfied, he must convene a three-judge court even though he expects the request to be ultimately denied.' 577 U.S. at 46. The single-judge gatekeeping function exists 'to protect against frivolous suits and premature panels,' not to permit substantive merits adjudication.

9.    Although Shapiro addressed the situation in which a single district judge contemplates whether to convene a panel in the first instance, the same governing standard applies a fortiori to the present posture, in which a Panel that has already been convened is asked to reconsider whether the threshold predicate of Section 2284(a) was properly satisfied. The substantiality threshold does not become more demanding because three judges, rather than one, are considering the question. A Panel that has been duly constituted should, under

Shapiro, retain jurisdiction unless the claims are found to be wholly insubstantial and frivolous.

## III. THIS ACTION CHALLENGES CONDUCT DIRECTLY CONNECTED TO THE APPORTIONMENT OF LOUISIANA'S CONGRESSIONAL DISTRICTS

### A. The Apportionment Predicate Is Satisfied by Causal and Substantive Connection.

10.    The Section 2284(a) predicate requires that the action 'challeng[e] the constitutionality of the apportionment of congressional districts.' That predicate is not limited to direct challenges to the constitutionality of an apportionment statute itself. Federal courts have consistently recognized that an action falls within Section 2284(a) where its causes of action are 'directly connected' to the constitutionality of congressional apportionment, even where the apportionment statute is not the formal target of the challenge.

11.    The statutory text and its historical context confirm this scope. Section 2284 was enacted as part of a broader statutory scheme designed to ensure that constitutional challenges to congressional apportionment are heard by panels of three judges drawn from different levels of the federal judiciary, and that those panels' decisions are subject to direct appeal to the Supreme Court under 28 U.S.C. § 1253. The animating concern is the importance and national significance of cases that affect the conduct of congressional elections under contested apportionment frameworks. That concern applies with full force to actions challenging executive or legislative conduct that directly affects congressional elections under an apportionment that has been the subject of constitutional adjudication, regardless of whether the apportionment statute itself is the formal target of the challenge.

### B. The Supreme Court Has Now Expressly Recognized This Action as a Parallel Post-Callais Proceeding Presenting Independent Questions.

12.    On May 4, 2026, the Supreme Court of the United States entered an Order in Callais, et al. v. Louisiana, et al., No. 25A1197, granting the Callais appellees' application to issue the certified judgment in Louisiana v. Callais, 608 U.S. ___ (2026), forthwith, departing from the 32-day default rule under Supreme Court Rule 45.3. Justice Jackson's dissenting opinion in 25A1197 expressly identifies the present action as a parallel post-Callais proceeding. The dissent, describing the post-Callais litigation, writes:

So, new litigation followed. A candidate and Louisiana voters who have already submitted their ballots filed suits against the Governor and the Secretary of State, asserting that, whatever might happen to Louisiana's congressional map in the future, this election is already underway and must continue pursuant to the current maps. See, e.g., Complaint in Garcia v. Landry, No. 26-cv-471 (MD La.), ECF Doc. 1; Emergency Petition for Injunctive Relief in National Council of Jewish Women v. Landry, No. C-777814 (La. 19th Jud. Dist., May 1, 2026).

25A1197 (Jackson, J., dissenting), slip op. at 2.

13.    The action identified by Justice Jackson as 'Garcia v. Landry, No. 26-cv-471 (MD La.)' is the present action. The case caption was amended on May 3, 2026 with the filing of the Amended Verified Complaint, but the docket number, district, and operative facts identified by Justice Jackson are the docket number, district, and operative facts of this matter. The Supreme Court has thereby formally recognized, in a published opinion, the pendency of this litigation as a post-Callais proceeding parallel to the substantive merits of Callais.

14.    Justice Jackson's dissent further articulates the doctrinal relationship between the present action and the Callais merits. The dissent states:

> And make no mistake: That course of action does not follow from the Callais decision itself. The question whether our decision should affect the map to be used in the ongoing primaries raises a host of legal and political questions that are entirely independent of the issue in Callais.

25A1197 (Jackson, J., dissenting), slip op. at 3 (emphasis added).

15.    Justice Jackson's framing has direct implications for the present Section 2284(a) inquiry. The post-Callais questions presented in this action are independent of the substantive merits adjudicated in Callais (i.e., the racial-gerrymander challenge to the existing map), but they are not independent of the apportionment process itself. To the contrary, they are intelligible only by reference to that process, in that they challenge the State's executive response to the constitutional infirmity of the existing congressional apportionment. The questions raised by this action thus occupy precisely the doctrinal space that Section 2284(a) was designed to govern: questions that arise from, and are causally connected to, congressional apportionment, but that present independent legal and constitutional questions warranting three-judge review.

*C. The Western District of Louisiana Has Now Expressly Recognized the Parallel Posture of These Proceedings.*

16.     On May 6, 2026, the Three-Judge Panel of the United States District Court for the Western District of Louisiana entered an Order (Doc. 269 in Callais v. Landry, No. 3:24-cv-00122-DCJ-CES-RRS) addressing post-Callais procedural matters. That Order (a) accepted Plaintiff Lauren Jewett's Motion to Intervene (Doc. 267, filed May 5, 2026) for briefing; (b) set a deadline of May 8, 2026, for additional motions to intervene by third parties; (c) set a deadline of May 15, 2026, for oppositions or responses by enrolled parties to the pending intervention motions; and (d) denied as moot the Robinson Intervenors' Motion to Vacate (Doc. 262), which had sought to strike that Panel's prior Order of April 30, 2026 (Doc. 261), on the ground that the Supreme Court's May 4 issuance of judgment had superseded the procedural challenge.

17.     The Western District's Order of May 6, 2026, confirms the parallel posture of these proceedings. The Western District is administering the Callais apportionment remand and the post-Callais intervention process under its Section 2284 jurisdiction. This Court is administering the post-Callais executive-action challenge under its Section 2284 jurisdiction. Each Court is operating within its proper sphere on a parallel timeline. The structural appropriateness of two distinct three-judge panels, addressing two distinct but causally connected questions arising from the Callais apportionment merits, is now operationally established.

*D. Executive Order JML 26-038 Is Intelligible Only by Reference to the Post-Callais Apportionment Process.*

18.     Executive Order JML 26-038 cannot be evaluated in isolation from the apportionment process. The Executive Order purports to derive its operative authority from an asserted electoral emergency triggered by, and existing solely because of, the Supreme Court's decision in Callais invalidating Louisiana's enacted congressional districting plan. The Executive Order's Whereas clauses, recited at Paragraphs 4 and 44 of the Amended Verified Complaint, expressly reference Callais as the predicate for the Defendant Secretary of State's certification of electoral emergency under La. R.S. § 18:401.1(B). The Executive Order's operative scope, identified at Paragraphs 5, 46, and 47 of the Amended

Verified Complaint, is selective: it suspends only the federal congressional portion of the May 16, 2026, closed party primary while leaving the State's administration of the May 16, 2026, primary going forward as scheduled for non-congressional offices. That selectivity is intelligible only by reference to the apportionment process: the suspended contests are the federal congressional contests because, and only because, the apportionment of the federal congressional districts was the subject of Callais.

19.    The Executive Order does not stand or fall on independent grounds. Its asserted predicate is the Callais decision. Its asserted necessity is the contemplated remedial map process under Callais. Its asserted scope is calibrated by reference to Callais. Each of the Plaintiffs' challenges to that Executive Order requires this Panel to evaluate whether the asserted Callais-based predicate is constitutionally sufficient to support the Executive Order's operative effect. That evaluation is, by necessity, an evaluation of the constitutionality of the State's response to a recent Supreme Court adjudication of congressional apportionment.

### E. The Operative Removal of Duly Nominated Congressional Candidates Is a Direct Apportionment-Adjacent Harm.

20.    The Executive Order's operative removal of Plaintiffs Lauren Jewett (Democratic nominee, 1st Congressional District) and Cleo Fields (Democratic nominee, 6th Congressional District) from the November 3, 2026, general election ballot, by automatic operation under La. R.S. § 18:410.9(A), is a direct apportionment-adjacent harm. The removal operates by reference to the congressional district. The operative removal of Mr. Clay Higgins (Republican nominee, 3rd Congressional District), although Mr. Higgins is not a Plaintiff in this action, is an operationally identical harm that falls upon a third congressional district. The aggregate disenfranchisement of 578,848 registered Louisiana voters, calculated as set forth in Paragraph 56 of the Amended Verified Complaint, is allocated by congressional district: 129,612 in the 1st Congressional District, 205,660 in the 3rd, and 243,576 in the 6th. The harm asserted cannot be evaluated, much less remedied, without reference to the constitutional and statutory framework governing the conduct of elections in those congressional districts.

### F. The Section 2 VRA and Fifteenth Amendment Counts Squarely Implicate Apportionment.

21.    Counts IV (Section 2 of the Voting Rights Act, 52 U.S.C. § 10301) and V (Fifteenth Amendment) of the Amended Verified Complaint directly implicate the apportionment of Louisiana's congressional districts. Plaintiffs allege that the Executive Order, in its selective application to federal congressional contests, falls in particular upon the only contest on the May 16, 2026 ballot featuring the Black-preferred congressional incumbent of an invalidated majority-Black district, and is directly traceable to Callais's adjudication of the racial composition of the (former) Sixth Congressional District. Adjudication of those Counts requires the Panel to evaluate (a) whether the Executive Order's selective scope falls disproportionately on Black voters in racially identified congressional districts; (b) whether the temporal sequence of post-Callais executive action supports a strong inference of intentional discrimination on the basis of race within the meaning of Callais and Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 266–68 (1977); and (c) whether the differential treatment between contests on the same ballot bears upon the totality-of-circumstances analysis Section 2, as construed in Callais, now requires.

## IV. PLAINTIFFS' CLAIMS COMFORTABLY EXCEED THE 'WHOLLY INSUBSTANTIAL AND FRIVOLOUS' THRESHOLD

*A. The Supreme Court's Express Recognition Confirms the Substantiality of the Questions Presented.*

22.    Justice Jackson's characterization of the post-Callais litigation, including the present action, as raising 'a host of legal and political questions that are entirely independent of the issue in Callais,' 25A1197 (Jackson, J., dissenting), slip op. at 3, is itself authoritative confirmation that the questions presented are substantial within the meaning of Shapiro. The Supreme Court does not address, in published opinions, questions that are 'wholly insubstantial and frivolous.' The fact that a sitting Justice has formally articulated the post-Callais questions in a published dissenting opinion, identifying them as a 'host' of important legal and political issues, is dispositive of the Shapiro substantiality inquiry. Whatever else may be said about the merits of the Plaintiffs' claims, those claims cannot be fairly characterized as 'obviously without merit.' Shapiro, 577 U.S. at 46.

23.    The Western District's Order of May 6, 2026 (Doc. 269) provides additional support for the substantiality inquiry. That Panel, having before it Plaintiff Jewett's Motion to Intervene, accepted the Motion for briefing rather than dismissing it as frivolous. The Western District's procedural recognition of the Motion's substantiality on related issues confirms that the post-Callais questions presented in this action are likewise substantial.

**B. Each of the Nine Counts of the Amended Verified Complaint Is Independently Substantial.**

24.    Even apart from the Supreme Court's and Western District's implicit recognition of substantiality, the Amended Verified Complaint asserts nine independent Counts, each predicated upon binding Supreme Court precedent and a verified factual record. No Count is foreclosed by 'prior decisions inescapably render[ing] the claims frivolous.' Shapiro, 577 U.S. at 45. To the contrary, each Count finds direct support in controlling precedent.

25.    Count I (Fourteenth Amendment Due Process and Equal Protection) is supported by Reynolds v. Sims, 377 U.S. 533 (1964); Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982); Anderson v. Celebrezze, 460 U.S. 780 (1983); Burdick v. Takushi, 504 U.S. 428 (1992); and Bush v. Gore, 531 U.S. 98 (2000). The selective voiding of cast absentee ballots, the operative removal of duly qualified nominees from the November 3, 2026, general election ballot, and the differential treatment of identically situated voters and candidates are the precise harms those decisions condemn. The Count is not frivolous.

26.    Count II (First and Fourteenth Amendments, Associational Rights and Ballot Access) is supported by Williams v. Rhodes, 393 U.S. 23 (1968); Anderson, 460 U.S. 780; and Lubin v. Panish, 415 U.S. 709 (1974). The mid-cycle suspension of the May 16, 2026, closed party primary, and the operative removal of duly nominated candidates from the November 3, 2026, general election ballot, severely burdened associational and ballot-access rights of both candidates and voters. The Count is not frivolous.

27.    Count III (Elections Clause and Federal Election Timing) is supported by Smiley v. Holm, 285 U.S. 355 (1932); Foster v. Love, 522 U.S. 67 (1997) (a Louisiana case); and Moore v. Harper, 600 U.S. 1 (2023). Foster, in particular, is a Louisiana case that the Supreme Court decided unanimously, holding that 2 U.S.C. §§ 1 and 7 preempt state arrangements that interfere with federal election timing. The Executive Order's purported postponement of

the May 16, 2026, federal congressional primary, and its operative effect upon the November 3, 2026, federal general election, fall squarely within the constitutional and statutory framework Foster enforces. The Count is not frivolous.

28. Count IV (Section 2 of the Voting Rights Act, as construed in Louisiana v. Callais) and Count V (Fifteenth Amendment) are supported by Callais itself, by Allen v. Milligan, 599 U.S. 1 (2023), by Thornburg v. Gingles, 478 U.S. 30 (1986), and by Arlington Heights, 429 U.S. 252. Plaintiffs allege a verified factual record sufficient to support a strong inference of intentional discrimination on the basis of race, including the temporal sequence of executive action immediately following Callais; the racial composition of the affected congressional districts; and the differential treatment between contests on the same ballot. The Counts are not frivolous, and indeed are directly supported by the very Supreme Court decision (Callais) that generated the asserted predicate for the Executive Order.

29. Count VI (Louisiana Constitution, Article I, §§ 3 and 10) is supported by Louisiana state-constitutional jurisprudence and by Moore v. Harper, 600 U.S. at 36, which preserves ordinary state-constitutional review of federal-election regulation. The Count is not frivolous.

30. Count VII (Equal Protection, Selective Cancellation and Differential Treatment of Class A and Class B) is supported by Bush v. Gore, 531 U.S. at 104–05, by Williams v. Rhodes, 393 U.S. at 30–31, and by ordinary equal-protection jurisprudence. The Count is structurally novel only in the sense that the State's selective cancellation, by Executive Order, of one set of contests on the same ballot while continuing to administer others is itself structurally novel. The constitutional principles brought to bear are well-settled. The Count is not frivolous.

31. Counts VIII (UOCAVA Preemption, 52 U.S.C. § 20301 et seq.) and IX (HAVA Preemption, 52 U.S.C. § 20901 et seq.) are supported by ordinary preemption doctrine under the Supremacy Clause, U.S. Const. art. VI, cl. 2, by the textual operation of the federal statutes themselves, and by basic principles of military and overseas voter protection that the Department of Defense, the United States Election Assistance Commission, and federal courts have repeatedly enforced. The Counts are not frivolous.

**32.** No Count of the Amended Verified Complaint approaches the Shapiro threshold of being 'wholly insubstantial and frivolous.' To the contrary, each Count is supported by controlling Supreme Court precedent and a verified factual record. Plaintiffs' claims are substantial within the meaning of Shapiro, and Section 2284(a) convocation is required.

## V. STRUCTURAL CONSIDERATIONS REINFORCE THE CONCLUSION THAT THIS PANEL'S JURISDICTION SHOULD BE CONFIRMED

*A. This Panel and the W.D. La. Panel Are Properly Two Distinct Three-Judge Panels Presiding Over Two Distinct Causes of Action.*

**33.** The present procedural posture involves two distinct Three-Judge Panels of the United States District Courts of Louisiana, presiding over two distinct causes of action arising under two distinct factual records: (a) this Panel (M.D. La. No. 3:26-cv-00471), convened on May 1, 2026, presiding over the Plaintiffs' constitutional and statutory challenges to Executive Order JML 26-038; and (b) the Three-Judge Panel of the United States District Court for the Western District of Louisiana in Robinson v. Ardoin / Callais, No. 3:24-cv-00122-DCJ-CES-RRS, presiding over the post-Callais remand on the substantive constitutional adequacy of any remedial congressional map.

**34.** Justice Jackson's framing in 25A1197 of the post-Callais questions as 'entirely independent of the issue in Callais' supports the structural validity of the two-panel allocation. The Western District's role is to fashion a remedial map consistent with the Supreme Court's adjudication in Callais; that role implicates the substantive contours of the remedial process. This Panel's role is to evaluate the constitutional and statutory legitimacy of the State's executive response to Callais (i.e., Executive Order JML 26-038), separately from any remedial-map question; that role implicates the validity of the executive action that has, in advance of any remedial map being fashioned, purported to cancel the May 16, 2026 federal congressional primary, operatively remove duly nominated candidates from the November 3, 2026 general election ballot, and selectively void the federal congressional contest on absentee ballots already cast.

**35.** The Western District's Order of May 6, 2026 (Doc. 269) confirms this proper division of jurisdictional labor. By accepting Plaintiff Jewett's Motion to Intervene for briefing, the

Western District has acknowledged the Plaintiffs' interests in the remedial-map process while preserving the present Panel's jurisdiction over the executive-action challenge. Each Panel is now operating in its proper sphere on a parallel timeline. The two Panels working in their proper spheres serve the institutional interests of clarity and appellate finality more effectively than any consolidation could.

36.    The May 4, 2026 Order, by issuing the certified judgment forthwith, accelerates the Western District Panel's exercise of its remedial authority. The remedial-map process committed to the Western District Panel must proceed in its proper forum without being deflected by the Plaintiffs' executive-order challenges, and the Plaintiffs' executive-order challenges must proceed in their proper forum (this Panel) without being deflected by the remedial-map process.

### B. The Direct-Appeal Architecture of Section 1253 Follows from Section 2284(a) Jurisdiction as a Matter of Statutory Construction.

37.    The convocation of this Panel carries with it the procedural consequence that any final order granting or denying injunctive relief is subject to direct appeal to the Supreme Court of the United States under 28 U.S.C. § 1253. Plaintiffs do not advocate for one appellate vehicle over another; Plaintiffs argue only that, where the Section 2284(a) predicate is satisfied, both the convocation requirement and the direct-appeal architecture follow as a matter of statutory construction. The satisfaction of the predicate is the substantive question; the appellate consequence is structural and follows automatically.

38.    The direct-appeal architecture serves the institutional interests Congress identified when it enacted Section 2284 and Section 1253 as companion provisions. Congress is committed to direct Supreme Court review of the most important cases in the federal judicial system, including those that affect the conduct of congressional elections under contested constitutional frameworks. The exigency of the May 16, 2026, election, the national significance of the questions presented, and the urgent need for prompt and final appellate review all confirm the wisdom of the Section 1253 framework as applied to the present action. Whether any subsequent appellate review proceeds under Section 1253 (in the event of three-judge convocation) or under the ordinary appellate framework (in the event of

single-judge adjudication) is a consequence of, not a determinant of, the Section 2284(a) predicate inquiry.

## VI. CONCLUSION

39. For the foregoing reasons, Plaintiffs respectfully submit that the Amended Verified Complaint plainly presents grounds requiring adjudication by a district court of three judges under 28 U.S.C. § 2284(a). The action challenges conduct directly connected to the apportionment of Louisiana's congressional districts. The constitutional and statutory claims comfortably exceed the Shapiro threshold of substantiality, a threshold the Supreme Court has now implicitly confirmed in 25A1197 by Justice Jackson's express recognition of this action as raising 'a host of legal and political questions' parallel to but distinct from the Callais merits, and that the Western District has implicitly confirmed in Doc. 269 by accepting Plaintiff Jewett's Motion to Intervene for briefing in the related Callais proceedings. The structural division of jurisdiction between this Panel and the Three-Judge Panel of the Western District of Louisiana preserves the integrity of two distinct proceedings, allows the post-Callais remedial process to proceed in its proper forum without being deflected by the executive-order challenges before this Panel, and serves the institutional interests of clarity and appellate finality.

40. Plaintiffs respectfully request that this Panel enter an Order affirming the proper convocation of this Three-Judge Panel under 28 U.S.C. § 2284(a) and confirming the Panel's continuing jurisdiction over this action.

RESPECTFULLY SUBMITTED,

*/s/ Jamar Lanier Ennis*
JAMAR LANIER ENNIS
La. Bar Roll #37455
**Ennis Law Firm, LLC**
412 N. 4th Street, Suite 102
Baton Rouge, Louisiana 70801
Phone: (225) 400-6600
Fax: (225) 308-2053
Counsel of Record for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of May, 2026, a copy of the foregoing Plaintiffs' Brief in Support of Three-Judge District Court Jurisdiction Under 28 U.S.C. § 2284(a) was served upon all counsel of record by the Court's CM/ECF system.

RESPECTFULLY SUBMITTED,

*/s/ Jamar Lanier Ennis*
JAMAR LANIER ENNIS
La. Bar Roll #37455
**Ennis Law Firm, LLC**
412 N. 4th Street, Suite 102
Baton Rouge, Louisiana 70801
Phone: (225) 400-6600
Fax: (225) 308-2053
Counsel of Record for Plaintiffs