# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| Lindsay Garcia, et al., | |
| Plaintiffs, | |
| v. | Civil Action: 3:26-cv-00471 |
| JEFF LANDRY, in his official capacity as Governor of the State of Louisiana, et al., | Hon. Stuart Kyle Duncan<br>Hon. Greg Guidry<br>Hon. Shelly D. Dick |
| Defendants. | |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE

Plaintiffs' Opposition confirms what Defendants' Motion to Transfer establishes: This case is inextricably intertwined with the *Callais* remedial proceedings in the United States District Court for the Western District of Louisiana. Despite Plaintiffs' efforts to recharacterize their claims as an independent challenge to executive action, the relief they seek, which consists of forcing congressional elections to proceed in the absence of the Executive Order suspending them, would directly interfere with the Western District's remedial authority over the same elections and the same map. Plaintiffs' disclaimers are belied by the practical consequences of their requested relief; their admissions acknowledge the substantive connection to *Callais*; and their procedural objections find no support in law. The Motion to Transfer should be granted.

I. **PLAINTIFFS HAVE NO EXPLANATION FOR HOW THIS COURT CAN GRANT RELIEF WITHOUT INTERFERING WITH THE WESTERN DISTRICT'S INJUNCTION OR ONGOING REMEDIAL PROCEEDINGS.**

Plaintiffs insist they "do not seek the use of SB8" or "any relief that would interfere with the Western District's injunction." ECF 7 at 1. But these disclaimers cannot overcome the inescapable consequence of the relief Plaintiffs seek. Plaintiffs ask this Court to enjoin the Governor's Executive Order JML 26-038 and the Secretary of State's certification of emergency pursuant to Louisiana Revised Statute § 18:401.1(B), the very mechanisms by which the State suspended congressional primaries pending adoption of a constitutionally compliant map. *See* Compl, ECF 1 at 20–21. If the Executive Order is enjoined, congressional primaries must proceed under the only existing congressional map, SB8, which the Western District has expressly enjoined the State from using "for any election." Order, *Callais v. Landry*, No. 3:24-cv-00122 (W.D. La. Apr. 30, 2026), ECF 261. Plaintiffs' requested relief therefore would place the State in the untenable position of being compelled by one federal court to conduct elections while being prohibited by another from using the only available map.

Plaintiffs themselves tacitly concede this problem. Their First Notice of Supplemental Authority acknowledges that their requested relief "could be construed as overlapping with the Western District panel's exclusive remedial authority over the map," and proposes a modification requesting that "any remedial process undertaken with respect to the United States House of Representatives primary be conducted under the supervision of the United States District Court for the Western District of Louisiana." ECF 3 at 4, 5. This is an admission that Plaintiffs' claims

cannot be adjudicated without directly interfering with the Western District's proceedings. If Plaintiffs' claims were truly independent of *Callais*, no such modification would be necessary. The Court should look to the practical consequences of the relief sought and take Plaintiffs' at their word: "[R]emedial proceedings" regarding the congressional primary (which are already underway in *Callais*) should be "conducted under the supervision of the United States District Court for the Western District of Louisiana." *Id.* at 5. Dismissal or transfer to the Western District is in order.

## II.    THE FIRST-FILED RULE APPLIES.

### A.  The Core Issue Here and in *Callais* Is the Same.

Plaintiffs argue that the two cases involve "[d]ifferent state actions," "different constitutional and statutory provisions," "different defendants," and "different remedies." ECF 7 at 2. This elevates form over substance. The First-Filed Rule does not require identical claims, parties, or legal theories; it only requires "substantially overlapping issues" to be determined by the first-filed court. *Waguespack v. Medtronic, Inc.*, 185 F. Supp. 3d 916, 923 (M.D. La. 2016); *see Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) ("[T]he court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed."). As this Court explained in *Robinson v. Ardoin*, the inquiry focuses on whether the "core issue" is the same. No. 22-cv-211, 2024 WL 1637530, at *1, 3 (M.D. La. Apr. 16, 2024).

The core issue here and in the ongoing *Callais* remedial proceedings is what map the State can use for upcoming congressional elections. In *Callais*, the Western

District has renewed its prior injunction of the State's use of SB8 and is supervising the creation of a remedial map. Order, *Callais*, No. 3:24-cv-00122 (W.D. La. Apr. 30, 2026), ECF 261. The conflict is that Plaintiffs here seek relief that would require congressional elections to proceed under SB8, as the only existing map, in direct defiance of the Western District's injunction. Challenging the Executive Order, which is merely the State's mechanism for complying with the Western District's injunction, is functionally equivalent to challenging the injunction itself. Plaintiffs' six causes of action are all directed at enabling elections to proceed on the current schedule, which necessarily requires the use of SB8 until the State enacts a new one. *See id.* (allowing the State an "opportunity to enact a Constitutionally compliant map").

The Fifth Circuit has made clear that the First-Filed Rule applies where cases "involve substantially overlapping issues," *Waguespack v. Medtronic, Inc.*, 185 F. Supp. 3d 916, 923 (M.D. La. 2016). Courts are to look to substance rather than pleading labels to determine overlap. *See Armstrong v. Capshaw, Goss & Bowers, LLP*, 404 F.3d 933, 936 (5th Cir. 2005) (Courts must "determine the true nature of a pleading by its substance, not its label."). The "waste of duplication," the risk of "rulings which may trench upon the authority of sister courts," and the need to "avoid piecemeal resolution of issues that call for a uniform result" are all present here. *Robinson*, 2024 WL 1637530, at *1 (quoting *Save Power*, 121 F.3d at 50). The First-Filed Rule dictates dismissal or transfer to the Western District.

## B. The Connection Between the Actions Is Substantive.

Plaintiffs attempt to reduce the relationship between these cases to a mere "causal connection," arguing that such a connection is "fundamentally different from

a substantive overlap of issues." ECF 7 at 2. This contradicts Plaintiffs' own words. Their Verified Complaint concedes that this action is "causally and *substantively* connected" to the apportionment issues at the heart of *Callais*. Compl. 1, 35–36 (emphasis added).

Plaintiffs' argument that "many cases arise in a causal sequence after a Supreme Court decision without becoming the same case" ignores what makes this case different. ECF 7 at 6. Granting Plaintiffs' requested relief necessarily would involve (a) determining a key component of the remedy that the Western District is overseeing, (b) requiring elections under a map the Western District has enjoined and is in the process of replacing, and (b) doing so on a timeline the Western District is actively managing. That is not a "causal" connection; that is a direct substantive conflict between two federal courts' exercise of authority over the same subject matter. Dismissal or transfer is warranted.

### C. *Robinson v. Ardoin* Supports Transfer.

Plaintiffs argue that *Robinson* "cuts against transfer" because the two *Robinson* actions were "both racial-gerrymandering challenges to Louisiana's congressional districts, with substantially overlapping plaintiffs, identical defendants, and overlapping factual records." *Id*. Plaintiffs misread *Robinson*. The *Robinson* court denied a motion to transfer venue primarily because "the court in which the case was last filed" (which was the Middle District there) was the one tasked with applying the First-Filed Rule and because "[t]he congressional maps, which [were] the core issue in each case and thus the primary subject of any potential evidence, [were] different." 2024 WL 1637530, at *2. By contrast, this Court is the

one with the later-filed case, and the congressional map at issue (SB8) is the same in both cases. *Robinson* thus confirms that these cases present substantially overlapping issues and must be resolved by one court—the one handling the first-filed case.

### III.    SECTION 2284(B)(1) DOES NOT STRIP THIS COURT OF AUTHORITY TO DISMISS OR TRANSFER.

Plaintiffs contend that "transfer of an action between federal districts where one such district has already convened a three-judge court is governed not by § 1404(a) but by 28 U.S.C. § 2284(b)(1), which vests transfer authority in the Chief Judge of the Court of Appeals." ECF 7 at 2. That argument is unsupported by either the statutory text or precedent.

Section 2284(b)(1) addresses only the chief judge of the circuit's procedural responsibility to *designate* judges to compose a three-judge panel. It says nothing about divesting the convened panel of authority to dismiss for lack of jurisdiction or transfer venue under § 1404(a). Plaintiffs cite no authority for the idea that empanelment of a three-judge court extinguishes its authority to transfer the case. That is likely because three-judge courts often transfer cases to other three-judge courts when cases raise related issues. *See, e.g.*, *Barnett v. Alabama*, 171 F. Supp. 2d 1292, 1295–96 (S.D. Ala. 2001); *Puerto Rican Legal Def. & Educ. Fund, Inc. v. Gantt*, 796 F. Supp. 681, 684 (E.D.N.Y. 1992); *Flanagan v. Gillmor*, 561 F. Supp. 36, 40 (S.D. Ohio 1982). This Court thus has authority to transfer this case to the Western District and it should do so if it does not dismiss outright.

IV.    THE § 1404(A) FACTORS FAVOR TRANSFER.

   A. Plaintiffs' Choice of Forum Deserves Diminished Deference.

Plaintiffs invoke the general rule that "a plaintiff's choice of forum is entitled to deference." ECF 7 at 8. But that deference is reduced where (as here) the plaintiff's claims are derivative of proceedings in another forum. The Supreme Court remanded *Callais* to the Western District, entrusting that court with responsibility for the very electoral and redistricting questions animating Plaintiffs' claims.

   B. The Private-Interest Factors Favor Transfer.

Plaintiffs emphasize that the Executive Order was issued in Baton Rouge and that executive offices and counsel are in this District. But the core evidentiary record—redistricting materials, legislative history, expert testimony, and demographic data—already exists in the Western District, developed over years of *Callais* litigation. Duplicating that record would be wasteful. The *Callais* remedial proceedings are underway in the Western District, and Plaintiffs' claims are inextricably tied to the remedial process that court is overseeing. Resolving related issues in a single forum promotes efficiency and avoids inconsistency.

   C. The Public-Interest Factors Overwhelmingly Favor Transfer

The public interest overwhelmingly favors a single forum to avoid conflicting injunctive commands. Plaintiffs' suggestion that the two courts occupy "complementary" spheres ignores reality. ECF 7 at 10. The Western District has enjoined using SB8 for any election, while this Court is being asked to force congressional elections to proceed on a schedule that necessarily requires the use of SB8. These functions are irreconcilable. If this Court grants Plaintiffs' requested

relief, state officials will face opposite injunctive commands. The interest of justice strongly favors a single forum.

## V.    PLAINTIFFS' REQUESTS FOR EMERGENCY RELIEF DO NOT DEFEAT TRANSFER.

Plaintiffs claim that transfer would delay adjudication of their TRO motion, contending that "there is no scenario in which transfer reduces delay; by definition, transfer adds delay." ECF 7 at 9. The risk of conflicting federal directives during an active election cycle is itself an emergency counseling in favor of unified proceedings. The harm from conflicting injunctions far exceeds any incremental delay occasioned by transfer. And in all events, urgency does not override proper venue. *See In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003) (holding that resolution of motion to transfer venue should have been "top priority" for district court). The Western District is actively managing the *Callais* remedial proceedings and has issued orders on an expedited schedule, demonstrating its capacity for prompt action. The Western District is the proper forum for this case—whether by dismissal to allow Plaintiffs to refile there or by transfer.

## CONCLUSION

Plaintiffs' opposition underscores rather than undermines the fact that the Western District is the proper forum for this case. This Court should grant Defendants' Motion and either dismiss this action outright or transfer it to the Western District pursuant to 28 U.S.C. § 1404(a).

Dated: May 7, 2026                                  Respectfully Submitted,

ELIZABETH B. MURRILL
Attorney General of Louisiana

/s/ *Carey Tom Jones*
Carey Tom Jones (LA #07474)
Assistant Attorney General
Office of the Attorney General
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70804
(225) 326-6079
BrungardM@ag.louisiana.gov

*Counsel for Defendants*